### CLOTWORTHY *v.* SCHEPP.

*(Circuit Court, S. D. New York. April 21, 1890.)*

1. TRADE-MARKS—INJUNCTION.
　　The manufacturer of an uncooked pudding, put up in packages, under the trade-mark name of "Puddine," cannot enjoin the maker of a similar preparation from using the word "Pudding" in describing it.
2. SAME.
　　The use of the word "Rose," in connection with the word "Vanilla," as a trade-mark, is no ground for enjoining a rival maker of similar products, containing those well-known flavors, from using those words in describing his goods.
3. SAME.
　　A manufacturer who falsely represents the composition of his goods by the labels on his packages is in no position to enjoin a rival manufacturer from using similar labels and packages, on the ground that the latter thereby deceives the public.

Motion for Preliminary Injunction.

Bill by William P. Clotworthy against Leopold Schepp to restrain certain alleged infringements of complainant's trade-marks.

*Wm. Henry Browne*, for complainant.

*Theron G. Strong*, for defendant.

LACOMBE, J. The complainant owns two registered trade-marks,— the word "Puddine" (an arbitrary word symbol) applied to an article of prepared food, and the word "Rose," also applied to the same in connection with the word "Vanilla." This last word is inaccurately stated in the declaration of trade-mark to be "an arbitrary and fanciful word symbol." It in fact describes a well-known flavoring extract, and, when used in every-day speech with food products, implies that such products are flavored with rose. Complainants seek to enjoin defendant from putting up and selling defendant's food preparation in certain packages, which

he contends infringe his trade-mark, and deceive the public; being mistaken, as he claims, for complainant's packages. What defendant makes and sells is, in fact, an uncooked "pudding," within the dictionary definition of that word, viz: "Flour or meal mixed with a variety of ingredients, and usually sweetened." Of course, the complainant cannot, by coining a word which resembles "pudding, "and registering it as a trade-mark, prevent other makers of pudding from calling their goods by their well-known English name. Nor, in view of the evidence produced by the defendant, namely, that both "rose" and "vanilla" are and have been for many years well-known flavoring extracts, bought and sold under those names, and used by confectioners, can complainant prevent other persons who flavor their food products with rose or vanilla, or a mixture of both, from truthfully describing them as so flavored.

Complainant further bases his claim to an injunction upon an alleged simulation of his packages, contending that the preparation of defendant is put up in packages which, by the arrangement of the descriptive terms "pudding" and "rose vanilla," in connection with the shape, size, color, and general appearance of the packages, simulate those of the complainant, and deceive the public into purchasing the defendant's under the belief that they are getting the complainant's. The affidavits of two persons who claim to have been deceived by the appearance of the packages are presented. Of course, ocular inspection of the respective packets is the most persuasive evidence on such a question. There is some similarity between the packages on one face, but the other parts are so dissimilar, so plainly declare that the goods are defendant's make and are claimed to be protected by his own trade-mark, that it is not easy to see how any but the most incautious purchaser could be deceived. Moreover, the complainant himself is engaged in deceiving the very public whom he claims to protect from the deception of others. He calls his preparation "fruit" puddine. In nine different places on his package this word "fruit" is repeated, as descriptive of the article, and a dish of fruit (pears, grapes, etc.) is most prominently depicted on one face of each packet. His packages plainly suggest that fruit of some kind enters in some shape into his compound. A chemical analysis produced by defendant, the substantial accuracy of which is not disputed, discloses the fact that his "puddine" is composed exclusively of corn starch, a small amount of saccharine matter, and a flavoring extract, with a little carmine added to give it color; it contains no fruit in any form. Under these circumstances, complainant's rights are not sufficiently clear to warrant the granting of a preliminary injunction. *Fetridge* v. *Wells*, 4 Abb. Pr. 144, approved in *Medicine Co.* v. *Wood*, 108 U. S. 218, 2 Sup. Ct. Rep. 436.