IMPROVED FIG SYRUP CO. et al. v. CALIFORNIA FIG SYRUP CO.

(Circuit Court of Appeals, Ninth Circuit.   January 30, 1893.)

No. 70.

1. TRADE-MARK—EQUITY—DECEIVING THE PUBLIC.
While a court of equity will not protect a trade-mark based on misrepresentation and deceit, and intended to deceive and defraud the public, yet where the testimony in an action to enjoin an infringement fails to show that plaintiff has attempted to practice any fraud, or impose upon and damage the public, the court will not refuse to extend its aid.

2. SAME—WHAT WILL BE PROTECTED—"SYRUP OF FIGS."
The phrase "Syrup of Figs" adopted by the manufacturer to designate a medical preparation, composed in part of fig syrup, and which, during a course of trade, has become known to the public by such name, indicates the origin of the preparation, rather than its quality or nature, and constitutes a valid trade-mark.

3. SAME—INFRINGEMENT.
The use, to designate a medical preparation, of the phrase "Improved Fig Syrup" upon bottles, wrappers, and devices, resembling in appearance a similar preparation manufactured and sold under the name of "Syrup of Figs," and calculated to deceive and mislead the public, will be enjoined as an infringement of trade-mark.

Appeal from the Circuit Court of the United States for the Northern District of California.

In Equity. Suit by the California Fig Syrup Company against the Improved Fig Syrup Company and others to enjoin the infringement of a trade-mark. A demurrer to the bill was overruled, (51 Fed. Rep. 296,) and the circuit court subsequently made an order continuing a temporary restraining order against defendants. Defendants appeal. Affirmed.

John L. Boone, for appellants.
Warren Olney, (Paul Bakewell, of counsel,) for appellee.

Before GILBERT, Circuit Judge, and MORROW and BEATTY, District Judges.

BEATTY, District Judge. This is an appeal from an order of the circuit court of the northern district of California, continuing a temporary restraining order against appellants *pendente lite.* It appears from the complaint that the appellee for a number of years last past has been engaged in the manufacture and sale of a liquid medical preparation, designated by it as "Syrup of Figs;" that such designation has been pressed upon the bottles containing the preparation, and printed upon the paper boxes containing the bottles, and that, through such and other means during a long course of trade, the medicine has become known to the public as "Syrup of Figs," also as "Fig Syrup," and appellee's name as "California Fig Syrup Co.," "Fig Syrup Co.," and "Syrup of Fig Co.," to such an extent that business letters concerning the same refer to it and appellee by such names and terms; that appellee was the first to manufacture such preparation, and to adopt and use the name so given to it; that, subsequently, the appellants

commenced the manufacture of a medicine claimed by them to be a like remedy for a similar purpose, which they styled "Improved Fig Syrup," put up in bottles and paper boxes resembling in size, shape, and appearance those used by appellee; and the complaint further alleges that the preparation of appellants is such, and offered under name and appearance so closely resembling that used by appellee, that the public are most likely to be deceived into the purchase of one for the other. A demurrer to the complaint was overruled, and upon a showing by affidavits, under an order to show cause why the temporary restraining order granted upon the filing of the complaint should not be continued pending the action such restraining order was continued.

The appellants now say that "the only question that arises under this appeal is whether, on the facts set out in the complaint and affidavits, the complainant is entitled to an injunction. Respondents demurred to the complaint on several grounds, but the demurrer was overruled by the court. The grounds of demurrer are, however, the grounds upon which we maintain that an injunction should not be granted," but the argument which follows is based upon other questions than those appearing alone from the complaint and demurrer.

The first point raised by appellants—that courts will not protect the trade-marks of manufacturers of patent or quack medicines—need not be discussed, for the reason that it does not satisfactorily appear from the record that appellee's preparation is such a medicine.

It is next urged that the appellee has no standing in a court of equity, because in the representations it has made concerning its medicine it has practiced deceit and fraud upon the public. If this were clearly established by the evidence, it would be ground for reversal. Trade-marks which are based upon misrepresentations and deceit, and especially such as are intended to deceive and defraud the public into the purchase of articles for what they are not,—into the belief they are valuable, when deleterious,—will not be protected by the courts. There is too much reason for the assertion that "there is not a thing that we eat or drink or wear which is pure or genuine." To protect a dishonest manufacturer in a fraudulent and deceptive trade-mark would be simply to aid him in fraud; to add to his unlawful gain by assisting him in palming off upon the public his worthless wares as valuable, and thus discourage, injure, and bankrupt the honest dealer, as well as to impose upon the public. Upon a proposition so plain, discussion or the citation of authorities would seem unnecessary, but we may, in this connection, refer to Medicine Co. v. Wood, 108 U. S. 218, 2 Sup. Ct. Rep. 436, and the cases therein cited. While we agree with appellants as to the doctrine, we are not satisfied from the evidence that the appellee has attempted to practice any fraud or impose upon and damage the public.

The appellants contend that the phrase "Syrup of Figs" is merely descriptive of the preparation, and therefore cannot be adopted as a trade-mark. It is not always clear when this doctrine invoked

by appellants is applicable, but the facts and the manner of the use of the words, symbols, or signs adopted in a particular case will aid us in reaching a conclusion. Generally, any words, marks, or symbols may be adopted as a trade-mark which are indicative of the origin or ownership of the manufactured article; but those used simply to describe the quality, kind, or nature of the article cannot be so appropriated. The law, as stated in Canal Co. v. Clark, 13 Wall. 322, has been quoted with approbation in Manufacturing Co. v. Trainer, 101 U. S. 51; Lawrence Manuf'g Co. v. Tennessee Manuf'g Co., 138 U. S. 546, 11 Sup. Ct. Rep. 396,—and other supreme court cases,—and is that "words in common use, with some exceptions, may be adopted, if at the time of their adoption they were not employed to designate the same or like articles of production. The office of a trade-mark is to point out distinctively the origin or ownership of the article to which it is affixed; or, in other words, to give notice who was the producer. This may in many cases be done by a name, a mark, or a device well known, but not previously applied to the same article. But, though it is not necessary that the word adopted as a trade-mark should be a new creation, never before known or used, there are some limits to the right of selection. This will be manifest when it is considered that in all cases where rights to the exclusive use of a trade-mark are invaded, it is invariably held that the essence of the wrong consists in the sale of the goods of one manufacturer or vendor as those of another, and that it is only when this false representation is directly or indirectly made that the party who appeals to a court of equity can have relief. This is the doctrine of all the authorities. Hence the trade-mark must either by itself or by association point distinctively to the origin or ownership of the article to which it is applied. The reason of this is that, unless it does, neither can he who first adopted it be injured by any appropriation or imitation of it by others, nor can the public be deceived. The first appropriator of a name or device pointing to his ownership, or which, by being associated with articles of trade, has acquired an understood reference to the originator or manufacturer of the article, is injured whenever another adopts the same name or device for similar articles, because such adoption is, in effect, representing falsely that the production of the latter are those of the former. Thus the custom and advantage to which the enterprise and skill of the first appropriator had given him a just right are abstracted for another's use, and this is done by deceiving the public,—by inducing the public to purchase the goods and manufactures of one person supposing them to be those of another. The trade-mark must therefore be distinctive in its original signification, pointing to the origin of the article, or it must have become such by association. And there are two rules which are not to be overlooked. No one can claim protection for the exclusive use of a trade-mark or trade-name which would practically give him a monopoly in the sale of any goods other than those produced or made by himself. If he could, the public would be injured, rather than protected, for competition would be destroyed. Nor can a

generic name, or a name merely descriptive of an article of trade, of its qualities, ingredients, or characteristics, be employed as a trade-mark, and the exclusive use of it entitled to legal protection."

The phrase "Syrup of Figs" is in no sense a generic one. It is not a name of a natural product, or of a class of natural products. If such an article exists, it must be the result of a manufacturing process. So far as we are advised, the name never existed, nor was it applied to any natural or artificial product, until formulated by appellee of words of no prior association, and by it used to designate its preparation. Even if such medicine were made entirely of figs, it is still a new name, applied to a manufactured, and not a natural product; hence indicates rather its origin, than its quality, or even its nature. It is not, however, claimed by appellee that its preparation is a product of figs alone, but that it is produced from a combination of the juice of figs with other plants. In this light, the phrase is not "merely descriptive of an article of trade, of its qualities, ingredients, or characteristics." Appellants claim the preparation is not made of figs, nor do they claim, nor has it been shown, that their production is pure syrup of figs; but, as theirs also appears to be a combination of different articles, neither are they entitled to the name as a generic or descriptive one. Why, then, should they use it, or any words or phrases in similitude thereof, unless it be thereby to induce the public to believe that the goods sold by them are those manufactured or produced by the appellee; thus palming off the former as those of the latter, which the law says shall not be done. That such has been appellants' design we are constrained to believe when we consider the character and size of their bottles, their paper boxes, the printing on each, and other matters connected therewith; for, it appearing that the terms used are not merely descriptive of the preparation in either case, it cannot be conceived that it was purely by accident that appellants adopted the terms and appliances they have to make known to the public, and dispose of, their goods. While there is a difference between the two, there is still such similarity as we think wou'd lead many purchasers—the consumer, though not likely the general trade dealer—to purchase one for the other. It is against the probability of such impositions upon the consuming class of the public that courts will extend their protection. "What degree of resemblance is necessary to constitute an infringement is incapable of exact definition, as applied to all cases. All that courts of justice can do in that regard is to say that no trader can adopt a trade-mark so resembling that of another trader as that ordinary purchasers, buying with ordinary caution, are likely to be misled." McLean v. Fleming, 96 U. S. 251.

As we construe the restraining order of the court below, it simply excludes the use by appellants of trade-marks, bottles, wrappers, and devices used in offering their preparation to the public similar to those applied by appellee to its preparation for a similar use and purpose. Appellants are not restrained from making their medicine, but from offering for sale or selling it under such or any circumstances, declarations, or representations that it

may be taken as the preparation made and offered to the public by the appellee. We have not deemed it necessary to enter into any lengthy discussion of the law on the points raised on this hearing, as they are fully settled by other courts, and moreover, the cause is still pending for final trial; but we think the facts before the lower court clearly justified the conclusion it reached, and its order and judgment, so far made, are affirmed.