CALIFORNIA FIG–SYRUP CO. v. PUTNAM et al.

(Circuit Court, D. Massachusetts. March 6, 1895.)

No. 204.

TRADE-MARKS—DECEPTION A BAR TO RELIEF.

Plaintiff, the manufacturer of a laxative compound called "Syrup of Figs," sought to restrain the use by defendants, on a laxative medicine manufactured by them, of the name "Fig Syrup," as an infringement of plaintiff's trade-mark. It appeared that syrup made from figs has no considerable laxative properties; that plaintiff's compound contained a very small amount of the juice of the fig, and its laxative ingredient was senna; but that plaintiff placed conspicuously on the bottles containing its compound labels describing the same as a "Liquid Fruit Remedy," and otherwise conveying the impression that it was made from figs and derived its laxative properties from them. *Held*, that the use of such labels was an imposition upon the public, which deprived the plaintiff of the right to seek the aid of equity.

This was a suit by the California Fig-Syrup Company against Kate Gardner Putnam and others to restrain the infringement of a trade-mark. The cause was heard on the pleadings and proofs.

R. A. Bakewell, Paul Bakewell, and Louis D. Brandeis, for complainant.

Fish, Richardson & Storrow, for defendants.

COLT, Circuit Judge. The plaintiff is the proprietor and manufacturer of a liquid laxative compound called "Syrup of Figs". The defendants manufacture and sell a laxative medicine which they term "Fig Syrup". The plaintiff claims a trade-mark in the words "Syrup of Figs" or "Fig Syrup", and seeks to enjoin their use by the defendants. There is no evidence that the defendants have imitated the plaintiff's labels or packages except in this particular. If this preparation is in fact a syrup of figs, the words are clearly descriptive, and not the proper subject of a trade-mark. Upon this point the contention of the plaintiff is that its preparation is not a syrup of figs, since it contains only a very small percentage of the juice of the fig; that the laxative ingredient in it is senna; that while the fig in the form of fruit may have laxative properties arising from the seeds and skin, the fig in the form of a syrup is no more laxative than any other fruit syrup; that it follows from these facts that these words, as applied to this compound, are not descriptive, but purely fanciful, and therefore constitute a valid trade-mark. The evidence shows that the compound is not a syrup of figs. It might more properly be termed a "syrup of senna", if the words were intended to be descriptive of the article. But, assuming this is not a syrup of figs, we are met with the inquiry whether these words, as applied to this preparation are not deceptive. The label on every bottle reads as follows:

"SYRUP OF FIGS.
The California Liquid Fruit Remedy.
Gentle and Effective."

On the sides of each bottle are blown the words, "Syrup of Figs", and on the back the words, "California Fig Syrup Co., San Fran-

cisco, Cal." On the face of every package is a picture of a branch of a fig tree with the hanging fruit, surrounded with the words, "California Fig Syrup, San Francisco, Cal."; and beneath this the words:

"SYRUP OF FIGS
Presents in the Most Elegant Form the
Laxative and Nutritious Juice of the Figs of California."

The advertisements are headed with this picture:

Thus we see that the leading representation on the labels, packages, and in the advertisements of this preparation is that it is a laxative fruit syrup made from the juice of the California fig. Mr. Winslow, a witness for the plaintiff, fairly expresses the public idea of this compound in reply to the following question:

"What did you suppose 'Syrup of Figs' was composed of when you purchased your first bottle? A. I supposed it was made from the natural fruit. It called for the fruit."

The popularity of this medicine arises from the belief in the mind of the ordinary purchaser that he is buying a laxative compound, the essential ingredient of which is the California fig, whereas, in fact, he is buying a medicine the active property of which is senna. The ethical principle on which the law of trade-marks is based will not permit of any such deception. It may be true, as a scientific fact known to physicians and pharmacists, that the syrup of figs has little or no laxative property; but this is not the belief of the general public. They purchase this preparation on the faith that it is a laxative compound made from the fruit of the fig, which is false. This is not an immaterial representation the effect of which is harmless, but it is a representation which goes to the very essence of the plaintiff's right to a trade-mark in these words. The cases are numerous where the courts have refused to grant relief under these circumstances. In the leading case of Leather Cloth Co. v. American Leather Cloth Co., 4 De Gex, J. & S. 137, 142, 144 (affirmed 11 H. L. Cas. 523), which was a suit where the statements on the face of the trade-mark were untrue, Lord Chancellor Westbury says:

"When the owner of a trade-mark applies for an injunction to restrain the defendant from injuring his property by making false representations to the public, it is essential that the plaintiff should not in his trade-mark, or in the business connected with it, be himself guilty of any false or misleading representation; for, if the plaintiff makes any material false statement in connection with the property he seeks to protect, he loses, and very justly, his right to claim the assistance of a court of equity. * * * Where any symbol or label claimed as a trade-mark is so constructed or worded as to make or contain a distinct assertion which is false, I think no property can be claimed on it, or, in other words, the right to the exclusive use of it cannot be maintained."

That case was cited and approved by the supreme Court in Medicine Co. v. Wood, 108 U. S. 218, 2 Sup. Ct. 436, where a trade-mark was claimed in "Atwood's Vegetable Physical Jaundice Bitters". The labels attached to the bottles stated that the medicine was manufactured by Moses Atwood, of Georgetown, Mass., whereas in fact it was manufactured by another person in New York. Mr. Justice Field, speaking for the court, says on page 223, 108 U. S., and page 436, 2 Sup. Ct.:

"To put forth a statement, therefore, in the form of a circular or label attached to an article, that it is manufactured in a particular place, by a person whose manufacture there had acquired a great reputation, when, in fact, it is manufactured by a different person at a different place, is a fraud upon the public which no court of equity will countenance."

In Clotworthy v. Schepp, 42 Fed. 62, 63, the right to a trade-mark was claimed in the word "Puddine" in connection with the words "Rose" and "Vanilla". In his opinion Judge Lacombe says:

"The complainant himself is engaged in deceiving the very public whom he claims to protect from the deception of others. He calls his preparation 'fruit' puddine. In nine different places on his package this word 'fruit' is repeated, as descriptive of the article, and a dish of fruit (pears, grapes, etc.) is most prominently depicted on one face of each packet. His packages plainly suggest that fruit of some kind enters in some shape into his compound. A chemical analysis produced by defendant, the substantial accuracy of which is not disputed, discloses the fact that his 'Puddine' is composed exclusively of corn starch, a small amount of saccharine matter, and a flavoring extract, with a little carmine added to give it color. It contains no fruit in any form. Under these circumstances, complainant's rights are not 'sufficiently clear to warrant the granting of a preliminary injunction."

In Alden v. Gross, 25 Mo. App, 123, 128, 130, a trade-mark was claimed in the words "Fruit Vinegar". In that case the court says:

"The vinegar thus branded was not manufactured out of fruit, in the plain, ordinary, usual sense of that term, but out of low wines distilled from cereals, and fruit enters into its composition only to a very insignificant extent. * * * It would be a novel application of the rule governing the subject of trademarks if one who manufactures vinegar out of cereals could appropriate for the article thus manufactured the word 'Fruit,' and thereby exclude another from using the word as descriptive of an article which is, in point of fact, manufactured out of fruit. * * * But whether the word 'Fruit,' in this connection, is purely indicative of the character or quality of the article or not, the plaintiffs' exclusive claim to it must fail on the further ground that the use of the word, in that connection, is clearly deceptive."

In Connell v. Reed, 128 Mass. 477, the plaintiff sought to establish the exclusive right to the words "East Indian" as applied to his remedy. In that case Chief Justice Gray says:

"The conclusive answer to this suit is * * * that the plaintiffs have adopted and used these words to denote, and to indicate to the public, that

the medicines were used in the East Indies, and that the formula for them was obtained there, neither of which is the fact. Under these circumstances, to maintain this bill would be to lend the aid of the court to a scheme to defraud the public."

In Siegert v. Abbott, 61 Md. 276, 284, the subject-matter of the trade-mark was "Angostura Bitters", which purported to have been prepared by Dr. Siegert, at Angostura, now Port of Spain, Trinidad. In fact Dr. Siegert was dead, and had never lived at Port of Spain. In dismissing the bill, the court says:

"It is a general rule of law, in cases of this kind, that courts of equity will not interfere by injunction where there is any lack of truth in the plaintiff's case; that is, where there is any misrepresentation in his trade-mark or la bels."

In Seabury v. Grosvenor, 14 Blatchf. 262, 263, Fed. Cas. No. 12,-576, the word "Capcine" was sought to be appropriated as a trade-mark. In that case Mr. Justice Blatchford says:

"A registered trade-mark is claimed in the word 'Capcine.' Courts of equity refuse to interfere in behalf of persons who claim property in a trade-mark, acquired by advertising their wares under such representations as those above cited, if they are false. It is shown that there is no such article as 'Capcine' known in chemistry or medicine or otherwise. The authorities are clear that, in a case of this description, a plaintiff loses his right to claim the assistance of a court of equity."

In Krauss v. Jos. R. Peebles' Sons Co., 58 Fed. 585, 594, it was shown that the liquor sold as "Pepper Whisky" was in fact a mixture of Pepper whisky and other whiskies. Judge Taft in his opinion says:

"To bottle such a mixture, and sell it under the trade label and caution notices above referred to, is a false representation, and a fraud upon the purchasing public. A court of equity cannot protect property in a trade-mark thus fraudulently used. It is not material whether the foreign whisky mixed with Pepper's is as good or better whisky than Pepper's, or whether the mixture is better than pure Pepper whisky. The public are entitled to a true statement as to the origin of the whisky, if any statement is made at all. The complainants and Pepper are not to be protected in a deception of the public, even if it works to the advantage of the public."

In Manufacturing Co. v. Beeshore, 8 C. C. A. 215, 59 Fed. 572, 574, a trade-mark was claimed in the words "One-Night Cough Cure". In the opinion of the court Mr. Justice Shiras says:

"In the present case, the so-called trade-mark 'One-Night Cough Cure' asserts a manifest falsehood or physiological impossibility. A cough or cold, so far seated as to require medical treatment, cannot be cured in a single night, and a pretense to the contrary is obviously an imposition on the ig norant."

In Fetridge v. Wells, 13 How. Pr. 385, 390, 393, the plaintiff sold a soap under the name of "Balm of Thousand Flowers". In denying the plaintiff's right to the exclusive use of these words as a trade-mark, Judge Duer says:

"I am fully convinced that the name 'Balm of Thousand Flowers' was invented, and is now used, to convey to the minds of purchasers the assurance that the highly-scented liquid to which the name is given is, in truth, an extract or distillation from flowers, and therefore not merely an innocent, but a pleasant and salutary, preparation. Not only is this the meaning that the words used naturally suggest, but in my opinion it is that which they actually and plainly express, and were designed to convey. .* * * Let it not be

said that it is of little consequence whether this representation be true or false. No representation can be more material than that of the ingredients of a compound which is recommended and sold as a medicine. There is none that is so likely to induce confidence in the application and use of the compound, and none that, when false, will more probably be attended with injurious, and perhaps fatal, consequences."

In Schmidt v. Brieg, 100 Cal. 672, 678, 35 Pac. 623, the supreme court of California, in a case where a trade-mark was claimed in the words "Sarsaparilla and Iron", says:

"We think the words 'Sarsaparilla and Iron' are generic terms, and were used for the purpose of indicating, not so much the origin, manufacture, or ownership of the beverage, as the quality of the article itself. * * * The words 'Sarsaparilla and Iron' describe ingredients well known to the public. * * * But it is claimed by respondents [plaintiffs below] that the words 'Sarsaparilla and Iron' do not, in fact, indicate the character, kind, or quality of their beverage; that it is not a composition of sarsaparilla and iron, but a solution of various substances; that it contains only a small quantity of sarsaparilla, and a small quantity of iron, and the name was given to the beverage only as a name by which it might be known, without in any way being descriptive; but it is sufficient to say in answer to this claim that the name given to the article is either generic, or it is of such a character that it can as well be applied to defendants' beverage as to the plaintiffs'."

In Phalon v. Wright, 5 Phila. 464, 467, the subject of the trade-mark was "Extract of Night-Blooming Cereus". In that case the court says:

"They [the plaintiffs] admit that the name is a deception, as far as it is used to indicate the real character of the compound; that the perfume is no extract from the flower, and that the trade-mark is in that respect a pure invention. 'The Night-Blooming Cereus,' however, exists, a flower well known by that name, which, when first introduced to public notice, excited much attention. An extract may be made from that flower, any perfumer has the right to make such an extract, and to call it what it is, by the name of the flower."

In Prince Manuf'g Co. v. Prince's Metallic Paint Co., 135 N. Y. 24, 38, 39, 31 N. E. 990, the New York court of appeals, in denying the right to a trade-mark in the words "Prince's Metallic Paint", by reason of a false representation as to the place from which the ore was obtained, says:

"Any material misrepresentation in a label or trade-mark as to the person by whom the article is manufactured, or as to the place where manufactured, or as to the materials composing it, or any other material false representation, deprives a party of the right to relief in equity. The courts do not, in such cases, take into consideration the attitude of the defendant. * * * And, although the false article is as good as the true one, 'the privilege of deceiving the public, even for their own benefit, is not a legitimate subject of commerce.'"

The plaintiff relies on the decisions of the circuit court for the Northern district of California, and the circuit court of appeals for the Ninth circuit, in a case brought by it against the Improved Fig-Syrup Company (51 Fed. 296, and 4 C. C. A. 264, 54 Fed. 175). That case, however, was only heard on motion for preliminary injunction; it also presented a different state of facts. Under these circumstances, it cannot be considered as a binding authority in this case. Consolidated Fruit-Jar Co. v. Bellaire Stamping Co., 27 Fed. 377, 382; Andrae v. Redfield, 12 Blatchf. 407, 425, Fed. Cas. No. 367; 1 High, Inj. (3d Ed.) § 5. Bill dismissed, with costs.