CALIFORNIA FIG SYRUP CO. v. STEARNS et al.

(Circuit Court, E. D. Michigan. April 1, 1895.)

1. TRADE-MARK—DESCRIPTIVE NAME—"SYRUP OF FIGS."

The words "Syrup of Figs" or "Fig Syrup," being descriptive, cannot be sustained as a valid trade-mark or trade-name, as applied to a syrup one of the characteristic ingredients of which is the juice of the fig.

2. SAME—DECEPTION.

The use of the name "Syrup of Figs," in connection with a description of the preparation as a "Fruit Remedy," "Nature's Pleasant Laxative," applied to a compound whose active ingredient is senna, and containing but a small proportion of fig juice, which has no considerable laxative properties, is deceptive, and deprives one so using it of any claim to equitable relief. California Fig Syrup Co. v. Improved Fig Syrup Co., 51 Fed. 296; on appeal, 4 C. C. A. 264, 54 Fed. 175,—distinguished.

This was a suit by the California Fig Syrup Company against Frederick Stearns & Co. to restrain the infringement of complainant's trade-mark. The cause was heard on the pleadings and proofs.

Paul Bakewell and R. A. Bakewell, for complainant.

George H. Lothrop, for defendants.

SWAN, District Judge. This is a bill in equity seeking to restrain the use by the defendant of the words "Fig Syrup," which it is claimed is an invasion of the right of the complainant, who is engaged in the manufacture and sale of a preparation which it denominates "Syrup of Figs. The California Liquid Fruit Remedy. Gentle and Effective." The label on each bottle of this preparation made and sold by complainant is thus inscribed, and above the words just quoted are the words, "Nature's Pleasant Laxative." On the sides of each bottle are blown the words, "Syrup of Figs," and, on the back, the words, "California Fig Syrup Co., San Francisco, Cal." The package inclosing the bottle has a picture of a branch of a fig tree, with fruit thereon, around which in a circle are the words, "California Fig Syrup, San Francisco, Cal.," and, below this, these words, in large type: "Syrup of Figs presents in the most elegant form the laxative and nutritious juice of the figs of California;" and following and immediately below these, in much smaller type, the words: "Combined with the medicinal virtues of plants known to be most beneficial to the human system, forming an agreeable and effective laxative to permanently cure habitual constipation, and the many ills depending on a weak or inactive condition of the kidneys, liver, stomach, and bowels, and is perfectly safe in all cases, and therefore the best of family medicines." The complainant is a corporation organized under the laws of the state of Nevada, having its chief offices in New York, Louisville, San Francisco, and Reno. The defendant is a corporation organized under the laws of the state of Michigan, and has its office at Detroit.

The bill of complaint in substance states that the complainant is, and for many years has been, engaged in the preparation and sale of the liquid, laxative, medical preparation, which is an agreeable and effective remedy against constipation, and is recognized as such by the public and the medical profession; that complainant was the first to make this preparation, and from the first gave to it the name "Syrup of Figs," by which name it has always been called. This name is stamped upon all the bottles of complainant's preparation, and also upon the oblong pasteboard box in which the bottles are inclosed, and upon the box in which they are packed. The complainant alleges also that the words "Syrup of Figs" have come to be known as a trade-name of complainant's preparation. By reason of the premises, and the large investment in advertising and manufacture of the preparation, complainant has the exclusive right to the name "Syrup of Figs," in connection with the liquid, laxative preparation, which is called by the public, indifferently,

"Syrup of Figs" and "Fig Syrup." The charge against the defendant is that, taking advantage of the reputation of complainant's preparation, and with the fraudulent intent to sell its own preparation as that of complainant's, defendant is making and selling a liquid, laxative preparation, which it puts up in bottles and packages, prominently marked "Fig Syrup" in connection with the word "Laxative," and that defendant is thus selling its preparation as that of complainant, and deceiving the public, and trading upon the enterprise of the complainant and its investment, which have made this a popular remedy with the public. The answer of the defendant says, in substance: That from the name of complainant's article defendant is led to suppose that it is a syrup of the fig. The complainant's bottle is always inclosed in a pasteboard box, so that the bottle does not indicate to the customer the name of the manufacturer. That complainant was not the first to manufacture a syrup of figs, or to call a syrup by that name, or to discover or name the fig. That complainants are patent medicine men, and that such people spend large sums to create a demand at an exorbitant price by fictitious advertising. That there can be no exclusive right to the name "Syrup of Figs," which, if the article is a syrup made from figs, is a descriptive name, and, if not so made, is a deceptive name. That defendant makes and puts on the market a laxative fig syrup, which is actually a syrup made from figs, and is properly named "Fig Syrup," and is not so made by defendant for the purpose of taking advantage of the reputation of complainant's article. That defendant's packages are wholly unlike those of complainant. That defendant sells only to druggists, and at reasonable prices, and that the ingredients of defendant's fig syrup are fully set forth by defendant in its catalogue, so that physicians and druggists may know what it contains, and judge of its merits.

The case is unembarrassed by any charge of the simulation of complainant's packages or wrappers, for it is not claimed that defendant has imitated either, nor is there any resemblance between them, but rather a marked and studied dissimilarity in color, design, size, ornamentation, and descriptive statement, save only that defendant terms its preparation "Laxative Fig Syrup." The pith of the grievance alleged is the use by defendant on its bottles and packages of the name "Fig Syrup," or "Laxative Fig Syrup," which it is claimed is but a colorable imitation of the name "Syrup of Figs," given to complainant's manufacture, and which the latter claims has become the trade-name of its preparation. The two questions therefore are: (1) Are the words "Syrup of Figs" or "Fig Syrup" a valid trade-mark? (2) If they are a valid trade-mark, has the complainant, by misrepresentation and deceit, lost its right to protection for such trade-mark? More briefly yet, the questions may be stated thus, as well said upon the argument, and as pleaded in the answer of defendant: (1) Are the words "Syrup of Figs" or "Fig Syrup" a descriptive name? and (2) are they, under the proofs, deceptive?

1. It is well settled that words "which are merely descriptive of the character, qualities, or composition of an article" cannot be monopolized as a trade-mark. Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625; Corbin v. Gould, 133 U. S. 308, 10 Sup. Ct. 312; Goodyear's India-Rubber Glove Manuf'g Co. v. Goodyear Rubber Co., 128 U. S. 598, 9 Sup. Ct. 166; Caswell v. Davis, 58 N. Y. 223; Canal Co. v. Clark, 13 Wall. 311. In Canal Co. v. Clark, supra, the court lay down two negative essentials of a valid trade-mark, and it is there stated:

"No one can claim protection for the exclusive use of a trade-mark or trade-name which would practically give him a monopoly in the sale of any goods other than those produced or made by himself. If he could, the public would be injured, rather than protected, for competition would be destroyed."

So, too, no one has a right to appropriate a sign or a symbol which, from the nature of the fact it is used to signify, others may employ with equal truth, and therefore have an equal right to employ for the same purpose. If, therefore, the words "Syrup of Figs" or "Fig Syrup" are truly descriptive of the manufacture of both complainant and defendant, they cannot be sustained as a valid trade-mark, for it is not claimed, of course, that complainant has the exclusive right to make syrup from figs. The word "syrup," which is claimed as an essential part of the alleged trade-mark, is defined by Webster as "a thick and viscid liquid, made from the juice of fruits, herbs, etc., boiled with sugar." The Standard Dictionary defines "syrup" generally as "a thick, sweet liquid," and "specifically, as a saturated solution of sugar in water, often combined with some medicinal substance, or flavored, as with the juice of fruits, for use in confections, cookery, or the preparation of beverages," and adds, "Syrups are commonly named from their source of flavoring." It is evident from these definitions that they afford a wide range of manufacture, and that the word "syrup" is necessarily qualified by that of the substance, or one or more of the substances, which distinguish it to the taste or in its medicinal property. The use of the word "syrup" thus characterized is evidenced by the large number of commercial syrups, each of which is named from that ingredient which gives it flavor or character. Similar instances of its use in connection with other ingredients from which a particular compound is named are rhubarb, maple, lemon, and other familiar preparations employed in cookery, medicine, and for other purposes. That the term "Fig Syrup" is descriptive is also apparent from the testimony of complainant's witnesses Pinniger, Underhill, and others, who substantially admit that it is intended to describe one of the constituents of the preparation. This appears also from the fact that on the bottle the article is termed a "fruit remedy," which is an unmistakable reference to the only fruit mentioned in the name of complainant's compound. The well-understood import of such names as "maple syrup," or the ordinary medicinal syrups, is that the prefix denominates the general term, points to the composition of the article, and indicates its principal or dominating ingredient, which either gives it flavor or medicinal quality. This nomenclature, so well known in pharmacy, if applied to complainant's preparation, can therefore have but one meaning,

and necessarily affirms that the base or essential principle of the article is figs. If the right to use the word "Syrup of Figs" or "Fig Syrup" is exclusive in the complaint, other persons cannot engage in making or selling such syrup, notwithstanding the fact that either of these names might with equal truth be employed by others whose manufactures may even excel complainant's in quality. If this be true, the public would be injured, for competition would be destroyed, and the quality of the article debased. It would also result that any other syrup, with any basal constituent, flavoring or medicinal, would come within the monopoly of the first appropriator of its name. This cannot be maintained. The names "Fig Syrup" and "Syrup of Figs" are not designed to indicate per se the owner or producer of the preparation, and distinguish it from like articles made by others, but were intended, and serve to indicate, even if truthfully used, its quality and composition, and fail to distinguish it from like articles made by others, and cannot be sustained as a valid trade-name. Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625; Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151; Goodyear's India-Rubber Glove Manuf'g Co. v. Goodyear Rubber Co., 128 U. S. 598, 9 Sup. Ct. 166; Caswell v. Davis, 58 N. Y. 230; Gilman v. Hunnewell, 122 Mass. 148.

2. Is the name "Syrup of Figs," as used by complainant, deceptive? It was admitted upon the argument by complainant's counsel that pure fig syrup is not laxative, and that the active principle of complainant's preparation is not figs, but senna; and, further, that the laxative power of figs is mechanical, and lies in the action of the skin and seeds, which are not present in complainant's preparation. The testimony of Queen, who originated this compound, relative to its composition, is as follows:

"The juice of the fig enters into the combination, or rather so much of the soluble part, or so much as we obtain of the soluble part, of the figs, enters into the combination by our method of treating the same, in a largely diluted liquid form. Q. Then, when you state that you use a hundred pounds of figs to one thousand gallons of the mixture, you mean, I presume, the soluble portion produced from the one hundred pounds of figs? A. Yes, sir. Q. You don't mean to say that you utilize the entire one hundred pounds? A. No, sir. We get rid of the seed and rind, and possibly of some of the pulpy matter. Q. So that the mixture of one thousand gallons would have but one gallon of this substance from the fig? A. Yes, sir. I say one; it might possibly be two; but I don't think it would amount to more than that. Q. Might possibly be less than one gallon? A. Possibly. If the figs happen to be very dry and hard, and more of the seeds and less of the soluble matter than usual."

He further says: "I have made experiments at different times, so as to form some intelligent opinion as to the quantity of the soluble part of the fig obtained, but we consider the quantity of figs in the composition as unimportant, and consequently do not endeavor to get the exact amount every time," and that if he was "to make it exactly the same, without putting in any fig juice," it would still have the same purpose, effect, and flavor, and be of the same color and appearance, and be just as good a medicine, without as with the figs. He also testifies that when he first got up the combination, his idea was to make it pleasant to the taste, and for that purpose put in figs, but before concluding his experiments decided that he would have to make a remedy that would give entire satisfaction, regardless

of the quantity of figs used; "and, knowing that the figs had no medicinal virtue in medicinal doses, and intending that the laxative should act in doses of from one-half to one tablespoonful, I came to the conclusion that the figs were superfluous; but, as I had started in to make it that way, I continued to put in the figs." He adds, "We still continue to put in the fig juice, though we regard it as superfluous, excepting that we think that a certain amount of fig juice is not objectionable," and admits that he does not think a person would tell the fig juice by the taste or flavor, or that they would be sensible of any purgative effect from the figs, and that a syrup produced from figs would have no medicinal or commercial value; that the juice of that fruit is too uncertain in its action, and too weak in its effect, to be administered as a laxative. The deposition of Gardner, defendant's witness, shows that defendant's fig syrup contains nine-twentieths syrup of figs, ten-twentieths fluid extract of senna, and that the other one-twentieth is made up of Rochelle salts, aromatics, and water. It is apparent from these facts that if the equities of the parties are dependent upon the quantity of fig juice which enters into their respective preparations, they largely preponderate in favor of defendant. It is equally apparent that complainant makes and sells its wares to the public under the representation that the active and controlling ingredient is derived from the fig, while in fact, under its own proofs, the juice of that fruit has no medicinal value, and is lacking in the potency required for a laxative. The main objects sought to be secured by the protection of trade-marks are the protection of the public against the purchase of inferior articles in the belief that they are a product or manufacture of a maker or dealer in whom they repose confidence, and whose goods alone they desire to purchase; and, second, to secure to the person who has first adopted and used a particular trade-name, under which he has sold his wares, the profit he might make by the sale of the goods for which his skill and integrity have obtained a reputation. Manufacturing Co. v. Trainer, 101 U. S. 51. It is a condition, however, of equitable relief to one who applies for the protection of his trade-mark, that the complainant should come into court with clean hands. The case of Leather Cloth Co. v. American Leather Cloth Co., 11 H. L. Cas. 523, states the principles upon which such relief is administered as follows:

"When the owner of a trade-mark applies for an injunction to restrain the defendant from injuring his property by making false representations to the public, it is essential that the plaintiff should not, in his trade-mark or in the business connected with it, be himself guilty of any false or misleading representations, for if the plaintiff himself makes false statements in connection with the property he seeks to protect, he loses, and very justly, his right to claim the assistance of a court of equity. Again, where a symbol or label claimed as a trade-mark is so constructed or worded as to make or contain a distinct assertion which is false, I think no property can be claimed in it, or in any other words; the right to the exclusive use of it cannot be maintained."

This case is freely quoted and approved in the case of Medicine Co. v. Wood, 108 U. S. 218, 2 Sup. Ct. 436. The same doctrine is

tersely put in the quotation in the last-mentioned case from Fetridge v. Wells, 4 Abb. Pr. 144:

"Those who come into a court of equity seeking equity must come with pure hands and a pure conscience. If they claim relief against the frauds of others, they must themselves be free from the imputation. If the sales made by the plaintiff and his firm are effected, or sought to be, by misrepresentations and falsehood, they cannot be listened to when they complain that by the fraudulent rivalry of others their own fraudulent profits are diminished. An exclusive privilege for deceiving the public is assuredly not one that a court of equity can be required to aid or sanction. To do so would be to forfeit its name and character."

The doctrine of these cases is of special application to the position of complainant, whose argument, inter alia, is that the preparation of defendant is not a syrup made from figs; that, were it such, it is in no sense a laxative medicine; and that its sale as a true syrup of the fig, and, as such, a liquid, laxative medicine when taken in medicinal doses, is a fraud upon the public, and an injury to the good will of complainant's business. Queen, whose testimony has already been referred to, in explaining the reason for the name given to complainant's compound, admits that in its selection "probably the wish to have the benefit of the popular impression that figs are laxative in large quantities, knowing that at the same time we can use the name in a fanciful sense, because of the fact that figs do not act as a laxative in medicinal doses, might have influenced me." To the same effect as to the popular impression created by a name is the testimony of Redington, Pinniger, Hummel, Love, and Fitch, who are each called by complainant. There can be no doubt, therefore, either that the complainant's preparation is not in fact compounded of the juice of the fig, but its principle is senna, or that its name was adopted and is used for the purpose of trading upon the popular fallacy that the juice of the fig in medicinal doses is an effectual remedy for constipation,—an impression which is admitted to be without foundation,—or that the ordinary purchaser buys the compound as and for the fruit remedy which it is advertised and asserted to be. The law applicable to this state of facts is as clear as their purpose and effect. It will not lend its aid to foster the delusion of the public or countenance the deceit. The authorities on this point are harmonious. In addition to those cited, the cases of Burton v. Stratton, 12 Fed. 699; Krauss v. Peebles' Sons Co., 58 Fed. 585; Syrup Co. v. Putnam (U. S. Cir. Ct., D. Mass.; not yet officially reported) 66 Fed. 750,—collate the authorities with exhaustive research. The relief prayed by complainant is in truth the privilege of selling its preparation of senna under the name of "Fig Syrup." Whatever the virtues or popularity of the complainant's specific, there is no ground on which such relief can be granted.

The cases of California Fig Syrup Co. v. Improved Fig Syrup Co., 51 Fed. 296; on appeal, 4 C. C. A. 264, 54 Fed. 175,—take a different view of the character of complainant's trade-mark. The bill was demurred to. The basis of this suit, as stated by the court, "was the effort of respondent to imitate the trade-mark of complainant,

and to thereby represent to the public that its goods were those of complainant." The devices on the bottles, wrappers, and packages of complainant were closely, and for some time exactly, imitated by defendant, and, as said by the court, defendant's "first, and almost exact, imitation of complainant's packages and device showed not the advertisement of a new article with a reputation to make, but the counterfeiting of an old article with a reputation already made, and the change in the device was and is an attempt to preserve the deceit, and yet avoid a liability for it." Judge McKenna expressly stated, in reply to defendant's claim that complainant's trade-mark was descriptive and deceptive, that "the question is now, not whether complainant has the exclusive right to use the words 'Fig Syrup' or 'Syrup of Figs,' but it is whether respondent has by use of them and other words, and by the other imitations alleged and exhibited, so far imitated the form of complainant's device as to represent its goods as its [complainant's] goods, and appropriate its reputation and trade. * * * The gravamen of the action is the simulation of complainant's devices and the deception of purchasers." The injunction was granted because of such imitations. On appeal from this order it was affirmed, the court of appeals, in the last paragraph of its opinion, saying: "As we construe this restraining order of the court below, it simply excludes the use by appellants of trade-marks, bottles, wrappers, and devices used in offering their preparation to the public similar to those applied by appellee to its preparation for a similar use and purpose." It is true that the court of appeals discuss at some length the character of complainant's trade-mark; yet, with all deference to the opinion of the learned court, it would seem from its concluding paragraph, quoted supra, that its expression upon this point was not necessary to the decision of the case presented, and that the true ground for the relief granted was the manifest equity of complainant to have the defendant restrained from unfair trade, independent of the question arising upon the validity of the trade-mark in controversy. Goodyear's India-Rubber Glove Manuf'g Co. v. Goodyear Rubber Co., 128 U. S. 598, 604, 9 Sup. Ct. 166; Lawrence Manuf'g Co. v. Tennessee Manuf'g Co., 138 U. S. 537, 11 Sup. Ct. 396; Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625. However this may be, I am unable to accept its conclusions upon the character of complainant's trade-name. The bill of complaint is dismissed, with costs.