CALIFORNIA FIG-SYRUP CO. v. CLINTON E. WORDEN & CO. et al.

(Circuit Court, N. D. California. March 22, 1898.)

No. 12,378.

1. TRADE-MARK—INJUNCTION—SYRUP OF FIGS.
   Upon a bill and affidavits showing that "Fig Syrup" or "Syrup of Figs" was not known in connection with a liquid laxative medicine until it was prepared by the complainant; that the good will in its manufacture is of great value; and that defendants, desiring to perpetrate a fraud and deceive the public, are making and s ing a laxative under that name,—a preliminary injunction will be granted.

2. SAME—RIGHT TO INJUNCTION—MISREPRESENTATION.
   The use of "Fig Syrup" or "Syrup of Figs" to designate a laxative compound the basis of which is senna, and which is correctly described in the labels or circulars as being composed of the juice of figs combined with the medicinal virtues of various plants, is not a misrepresentation as to the character of the compound such as will deprive complainant of the right to equitable relief.

3. EQUITY—MULTIFARIOUSNESS.
   The question of multifariousness is largely within the discretion of the court. As a general rule, whenever the matters set up require entirely distinct and different kinds of relief, the bill is multifarious; but, if the relief sought is the same as against all the defendants, a demurrer will not be sustained.

This is a suit in equity by the California Fig-Syrup Company to enjoin the defendants from making, selling, or offering for sale any liquid laxative preparation under the name "Syrup of Figs" or "Fig Syrup," or under any name in colorable imitation of the name "Syrup of Figs" or "Fig Syrup." The cause was heard on a motion for a preliminary injunction.

Olney & Olney, for complainant.

John H. Miller and Purcell Rowe, for defendants.

MORROW, Circuit Judge. This is an order to show cause why a preliminary injunction should not be granted as prayed for in the bill of complaint. The motion was heard upon the bill of complaint and affidavits in support thereof, and upon a demurrer to the complaint and counter affidavits. The bill alleges, among other things: That the complainant is a corporation created and existing under the laws of the state of Nevada. That the defendant Clinton E. Worden & Co. is a corporation created and existing under the laws of the state

of California, a citizen of the state of California, and having its chief office and place of business in the city and county of San Francisco, state of California; and that the other defendants are each and all citizens of the state of California, residing and doing business within the Northern district of California. That in 1879 one Richard E. Queen invented a certain medical preparation or remedy for constipation, and to act upon the kidneys, liver, stomach, and bowels, which medical compound is a combination in solution of plants known to be beneficial to the human system, forming an agreeable and effective laxative to cure habitual constipation and many ills depending upon a weak and inactive condition of the liver, kidneys, stomach, and bowels; and that this preparation has found favor with physicians throughout the country, and with the public at large, and is, and for many years last past has been, sold in large quantities throughout the United States, Canada, England, and other countries, and throughout the state of California. That, shortly subsequent to the aforesaid invention, a company was incorporated, and thereupon the said Richard E. Queen sold, transferred, and assigned all his right, title, and interest in and to the said medical compound, and in and to the trade-name, trade-marks, and good will of said compound, to the complainant. That ever since said incorporation, and continuously up to the present time, the complainant has been, and now is, engaged in the manufacture and sale of said medical preparation or remedy. The complainant alleges: That this laxative medical compound or preparation, made and put up as aforesaid, has always been marked, named, and called by the complainant "Syrup of Figs," being advertised under that name by the complainant; the name "Syrup of Figs" being printed or otherwise marked upon every bottle of this preparation made and sold by the complainant, this name being also printed upon the boxes, packages, or wrappers in which the bottles of this preparation are packed for shipment and sale. That it has been the practice of the complainant to put the bottles containing this preparation in oblong pasteboard boxes or cartons, so that they will reach the consumer in that form. That in all instances, not only the bottle which contains this preparation, but the box or carton which contains the bottle of this preparation, is marked with the words "Syrup of Figs," and also contains printed matter stating that this preparation is a medical laxative preparation, and also giving a general idea of its uses and purposes. That the complainant has spent large sums of money, to wit, more than $1,000,000, in advertising said preparation, always under the name of "Syrup of Figs" or "Fig Syrup," throughout the United States and other countries, thus making the same and its merits known to the public to such an extent that it has become a household word. That this preparation, in consequence, has become known as a liquid laxative medicine, so as to be distinguished from all other medicines of the same general character under the name of "Syrup of Figs"; and that its merits and popularity are so well established that many millions of bottles of complainant's preparations have been sold, always under the name of "Syrup of Figs" or "Fig Syrup"; and that in the last 12 months more than 2,000,000 bottles of said preparation have been sold. That the good name of

the preparation is gaining in popularity and in the confidence of the public to such an extent that the demand for the same is increasing each day; and that now, and for several years past, this preparation of Syrup of Figs or Fig Syrup has been one of the principal articles of sale, and a part of the stock of almost every druggist in the United States. That on account of the care, skill, and fidelity with which complainant has and does prepare this laxative preparation or medicine, and by reason of the steady and increasing demand for the same, and the large sums of money spent in advertising and in introducing the same, and making it known to the public, the complainant's good will in its manufacture is of great value, to wit, of the value of $1,000,-000. That the defendant Clinton E. Worden & Co., well knowing all the premises, and that complainant's preparation had attained a great popularity and a large sale on account of its merits as a liquid laxative compound for the human system, and desiring and intending to perpetrate a fraud upon complainant's rights, and to trade to its own profit and advantage upon the reputation created by complainant,· and desiring to impose a worthless production upon the public as and for complainant's preparation, has prepared, as complainant is informed and believes, a preparation, and put it up in packages resembling in form complainant's preparation, and has called said preparation "Syrup of Figs," and is palming off the same, or causing the same to be palmed off, upon the public, as and for complainant's preparation, and is profiting from the valuable reputation which complainant has created for its medical laxative preparation. That on some bottles of such preparation the statement is made that the preparation is made by the San Diego Fig-Syrup Company, San Francisco, Cal.; on others, that it is made by the Fig-Syrup Company, San Francisco; on others, by the San Francisco Fig-Syrup Company, San Francisco, Cal.; on others, by the New York Fig-Syrup Company, New York City, N. Y.; on others, by the Laxative Fig-Syrup Company, New York City, N. Y.; and again on others it is stated that it is prepared by Yeteva Drug Company, Louisville, Ky. That there is no corporation, co-partnership, or firm except the complainant doing business under the name of "Fig-Syrup Company." That the statements made upon the bottles containing the preparation put up by the defendant Clinton E. Worden & Co. are intended to deceive the public, and induce them to believe that the compound prepared by the said defendant is prepared by the complainant. That the other defendants are druggists, doing business in the city and county of San Francisco, state of California, who, knowing that the compound put up and sold by the defendant Clinton E. Worden & Co. is not manufactured, put up, or sold by the complainant, with the intent and purpose of deceiving their customers, are selling to customers the liquid laxative compound prepared by the defendant Clinton E. Worden & Co. as and for the medical preparation made and sold by the complainant. That the complainant has been greatly injured by the defendant in the manufacture of this liquid laxative preparation, Syrup of Figs or Fig Syrup; the amount the complainant is unable to state, but it believes it has suffered damage and injury to the extent of $10,000. That this is a continuing wrong, and one that it is impossible to exactly calculate,

and one which, if permitted to continue, will work irreparable injury to the complainant.

Two exhibits, marked "A" and "B," were filed with the complaint. Exhibit A represents the box or carton used as a wrapper for the bottle containing the preparation, and Exhibit B the bottle as marked and put up for sale. The affidavits introduced by the complainant fully support the allegations of the bill. The demurrer to the bill raises the question as to its sufficiency. It is also objected that the bill is multifarious, in this: that several separate and distinct causes of action are charged against several separate and distinct defendants. The affidavits introduced by the defendants refer to the case of Syrup Co. v. Stearns, 67 Fed. 1008, decided adversely to the complainant upon a bill charging the infringement of a trade-mark. They also deny that the defendant Clinton E. Worden & Co. has placed on its bottles any statement intended to deceive the public, or to induce them to believe that the compound prepared by them is prepared by complainant, and deny that it has put up these bottles and packages in such close imitation of those of the complainant as to cause retail purchasers who call for complainant's article to conclude, when they are handed a bottle of defendants' article, that they have the article manufactured by complainant. The bill of complaint in this case proceeds upon the theory that the rights of the complainant have been infringed by the defendants by unfair competition. It is not strictly a charge of an infringement of a trade-mark, although it has many of the elements of such a case; but the facts alleged by the complainant are plainly set forth for the purpose of establishing the charge that the defendants are engaged in an unfair and fraudulent competition against the business of the complainant, conducted with the intent on the part of the defendants to avail themselves of the reputation of the complainant to palm off their goods as the goods prepared and put up by the complainant. The main question is therefore one of fact, since the law upon this subject has been settled by numerous authorities. A reference to a few of these authorities will show, however, what facts have been deemed sufficient to establish the unfair and fraudulent character of the competition.

In McLean v. Fleming, 96 U. S. 245, the court held:

"It is not necessary, in order to give the right to an injunction, that the specific trade-mark should be infringed, but it is sufficient if the court should be satisfied that there was intent on the part of the respondent to palm off his goods as the goods of complainant, and that he persists, after being requested to desist."

The case of California Fig-Syrup Co. v. Improved Fig-Syrup Co., 51 Fed. 297, was a case in which the defendants were charged with an infringement of a trade-mark, and it was held that the complainant was entitled to an injunction protecting it in the use of the words "Fig Syrup" or "Syrup of Figs," conjoined with the other words and devices used by it, as set forth in the bill. An interlocutory decree granting the injunction prayed for was affirmed by the circuit court of appeals. 4 C. C. A. 264, 54 Fed. 175. The court, in commenting upon the name of the article, said:

"The phrase 'Syrup of Figs' is in no sense a generic one. It is not a name for the natural product, or of a class of natural products. If such an article

exists, it must be the result of a manufacturing process. So far as we are advised, the name never existed, nor was it applied to any natural or artificial product, until formulated by appellee of words of no prior association, and by it used to designate its preparation. Even if such were made entirely of figs, it is still a new name, applied to a manufactured, and not a natural, product; hence indicates rather its origin than its quality, or even its nature."

The complainant in that case is the complainant in this case, but the contention in the present case, as before stated, is that the defendants have, in the use of the name "Fig Syrup" or "Syrup of Figs," appropriated a name which the public believe to be the property of the complainant; that the complainant is injured by this deception; and that it is entitled to protection against such an injury.

In Walter Baker & Co. v. Sanders, 26 C. C. A. 220, 80 Fed. 889, the suit was brought by the proprietors of the original "Baker's Chocolate," to restrain unfair competition by defendants in the sale of a rival chocolate manufactured and put up in the city of New York, in the name of W. H. Baker, of Winchester, Va. It was held by the circuit court of appeals that one entering into competition with another person of the same name, who has an old and established business, is bound to distinguish his goods from those of the latter, so as to prevent confusion, and that where, by long use, the words "Baker's Chocolate" had come to mean, in the minds of the public, complainant's goods, a subsequent maker of chocolate, with the same name, was not entitled to use that name, whether with his given name or its initials, in such manner as to announce that the goods he sold were "Baker's Chocolate."

In Gage-Downs Co. v. Featherbone Corset Co., 83 Fed. 213, the complainant had long been in the business of making and selling corset waists at Chicago, and marking them "Chicago Waists"; and, being the only person marking its manufactures thus, the complainant had come to be known as the originator by manufacture of the goods thus branded. In the course of its business, the complainant employed Buyer & Reich as its agents on the Pacific Coast, and the latter sold these goods thus marked. After the termination of their agency for the complainant, Buyer & Reich continued to sell "Chicago Waists" made, not by the complainant, but by the defendants, residing and doing business at Kalamazoo, Mich.. The court held that:

"It is a fundamental principle that a man cannot make use of a reputation which another manufacturer has acquired in a trade-mark or name, and, by inducing the public to act upon a misapprehension as to the source of the origin, deprive the other party of the good will and reputation which he has acquired, and to which he is entitled. Now, there are many cases in which it has been held that the name of the place where goods are manufactured is not the subject of appropriation; and this may be said to be the general rule, and to be applicable where that is the sole feature of the trade-mark or trade-name, and where the name of the place is used in its primary signification. But the use of the name of a place may, under circumstances, be such as to denote to the eye and mind of the public the name of the person who has, perhaps, by long-continued business in that place, or long appropriation of that name, and being the only person there who has thus appropriated and used that name, produced goods which have gained their favor. In such circumstances the name of the place may acquire a secondary signification, and become, instead of denoting the place where the goods are manufactured, a mark denoting the manufacturer, and in such case, and in the circumstance where the name has thus acquired a

secondary signification, a party may use it, and may be entitled, possibly, to its exclusive use."

In Johnson v. Bauer, 27 C. C. A. 374, 82 Fed. 662, the complainant, a corporation, had long been engaged in the manufacture and sale of medical and surgical plasters of various kinds, put up in various descriptions of boxes, and had adopted as a trade-mark, in addition to other insignia, a red Greek cross. The defendant, also a corporation, had been engaged in a like business; but it placed upon its plasters a Maltese cross in white and gilt, with a red circle thereon, and the words and letters "B. & B. Trade-Mark." The evidence disclosed the fact that the plasters of the complainant had become known and were ordered and sold as "Red Cross Plasters." Otherwise than the resemblance in the two crosses, there was little, if any, similarity between the packages containing the goods of the complainant and those containing the goods of the defendant. Judge Jenkins, speaking for the circuit court of appeals in the Seventh circuit, said:

"It may be true that those engaged in the trade and acquainted with the manufacture of both parties could not be deceived; but as the goods of the appellant have come to be known as 'Red Cross Plasters,' and notwithstanding a discriminating examination would detect the distinction in the trade-mark, the casual observer might easily be mistaken, and imposition would be easy. The red cross speaks to the eye, and the article, being known by that designation, speaks also to the ear by that name."

It was accordingly held that the use of the red Maltese cross upon the goods of the defendant was wrongful. It is evident that, while the facts in this case were deemed sufficient to establish an infringement of a trade-mark, the decision of the court was placed upon a broader foundation than the mere imitation of a label, when it said that the name "Red Cross" spoke to the ear, and cited the case of Pillsbury v. Mills Co., 24 U. S. App. 395, 12 C. C. A. 432, 64 Fed. 841, as an authority, where it was held that the right of the complainant to relief did not rest "upon any notion of right to or property in a technical trade-mark, but upon principles applied by courts of equity in cases analogous to cases of trade-marks, where the relief is afforded upon the ground of fraud, which in turn rests upon the hypothesis that the party proceeded against has deliberately sought to deceive the public, and to defraud another, by palming off his own goods as the goods of that other."

The law in England on this subject is also well established. Two late cases will illustrate the scope of its application.

In Reddaway v. Banham [1896] App. Cas. 199, the plaintiff had for some years made belting, and sold it as "Camel Hair Belting," a name which had come to mean in the trade the plaintiff's belting, and nothing else. The defendant began to sell belting made of the yarn of camels' hair, and stamped it "Camels' Hair Belting," so as to be likely to mislead purchasers into the belief that it was the plaintiff's belting, endeavoring thus to pass off his goods as the plaintiff's. The lord chancellor, in moving the judgment of the house of lords, stated the law upon the subject in a single sentence: "Nobody has any right to represent his goods as the goods of somebody else." It was accordingly held that the plaintiff was entitled to an injunction restrain-

ing the defendant from using the words "Camel Hair" as descriptive of or in connection with belting made or sold or offered for sale by him, and not manufactured by the plaintiff, without clearly distinguishing such belting from the plaintiff's belting. The injunction was therefore qualified to the extent of permitting the defendant to manufacture and sell camels' hair belting, providing the article so manufactured and sold was clearly distinguished from plaintiff's belting. The qualification arose out of the fact that, for many years, belting made of camels' hair yarn had been known in the markets of the world, and it was asked: "What right can an individual have to restrain another from using a common English word because he has chosen to employ it as a trade-mark?" The answer was that "he had no such right, but he had a right to insist that it shall not be used without explanation or qualification, if such a use would be an instrument of fraud."

In the present case it will be observed that complainant's right is more closely identified with the name of the article. The name of "Fig Syrup" or "Syrup of Figs" was not known to the world as a liquid laxative medicine until it was prepared by the complainant, and it was not then known as such an article in any way distinguished from its production by the complainant. This is an important fact to be taken into consideration in determining whether the defendants are engaged in unfair competition.

In Saxlehner v. Appollinaris Company [1897] 1 Ch. 893, it was held that the principle that "nobody has any right to represent his goods as the goods of somebody else" has no limit as regards name, origin, honesty of manufacture, or sale, or otherwise; that a trader whose goods have acquired a reputation under a particular name can restrain the user of that name in any way whatever by a rival trader in connection with the latter's own goods, even though that reputation has been acquired by the exertions or enterprise of the rival trader as an importer and vendor on behalf of the plaintiff.

It is claimed, however, that the complainant does not come into equity with clean hands; or, as the maxim is otherwise expressed, "He that hath committed iniquity shall not have equity." The iniquity of the complainant that has been urged upon the court's attention is that the article manufactured and sold by it, and for which it seeks protection, is not, in fact, a "Fig Syrup" or "Syrup of Figs," but a compound the basis of which is senna, a well-known standard laxative medicine, henbane, and ground Jamaica ginger, together with sugar and alcohol, and, for the purpose of giving a flavor to the preparation, the extracts of peppermint, cloves, cassia, and anise. This objection if true would doubtless be effective as against the original article placed upon the market by the complainant, when it was advertised as being "the laxative and nutritious juice of the figs of California, combined with the medical virtues of plants known to be most beneficial to the human system," etc. This objection prevailed against the claim of the complainant in the case of Syrup Co. v. Stearns, 67 Fed. 1008. But the article which the complainant offers for sale is not now put forth under that claim. The statement now placed upon the bottles and boxes containing the preparation is that the "remedy presents in the most acceptable form the medicinal laxative principles

of plants known to act most beneficially to cleanse the system effectually. * * * The juice of figs in the combination is to promote a pleasant taste." Again it is stated that "its efficacy and delicacy of flavor are due to the medicinal and agreeable qualities of plants and aromatic carminatives skillfully combined with pleasant liquids, among which may be mentioned the juice of figs." It appears to be a fact that the preparation does contain a small quantity of the juice of figs, which is combined with other ingredients for the purpose of promoting a pleasant taste in the compound, and that senna and aromatic plants form the basis of the preparation. I do not discover anything in the statement on the boxes or bottles, or in the picture of figs displayed upon the boxes, or in the picture of the young lady holding a branch of the fig tree laden with the fruit also displayed upon the boxes, that can be properly characterized as a fraudulent representation. Dealers are allowed to make their goods appear attractive, and place upon them such pleasing figures and devices as will make them salable; and, when this is done without fraudulent representation, the law will not refuse relief because the "poster is more attractive than the performance." Upon the facts presented in the application for an injunction in this case, it appears to me that the complainant is entitled to relief against the defendants in the manufacture and sale of the preparation of "Syrup of Figs" or "Fig Syrup" under the name and in the form and style shown by Exhibits D, E, F, G, H, I, S, and T.

With respect to the technical objection that the bill is multifarious, it is perhaps sufficient to say that the bill alleges that the defendants, knowing the premises, have fraudulently conspired together to perpetrate the frauds set forth in the bill. Moreover, whether an objection of this kind should be entertained depends largely upon the discretion of the court. As a general rule, it may be said that, whenever the several matters set up in the bill require entirely distinct and different kinds of relief, the bill is multifarious; but, if the relief sought is the same as against all the defendants, it does not appear that the objection should be considered sufficient to sustain the demurrer. Merwins, Eq. § 926. A preliminary injunction will issue, as prayed for in the bill of complaint.