CALIFORNIA FIG SYRUP CO. v. FREDERICK STEARNS & CO.

(Circuit Court of Appeals, Sixth Circuit. April 14, 1896.)

No. 328.

1. TRADE-MARKS—DESCRIPTIVE NAME—"SYRUP OF FIGS."
    The words "Syrup of Figs" or "Fig Syrup," being descriptive, are not sustainable as a trade-mark for a laxative syrup in which the active medicinal property is the juice of the fig. 67 Fed. 1008, affirmed.

2. SAME—DECEPTIVE NAME.
    The use of the words "Syrup of Figs" in connection with a preparation described as a "Fruit Remedy," "Nature's Pleasant Laxative," and with other statements leading the public to understand that the juice of the fig

is the important medicinal agent, is deceptive, so as to prevent equitable relief, where the preparation contains but a slight quantity of fig juice, which has no laxative properties, and in which the active medicinal ingredient is senna. 67 Fed. 1008, affirmed. Syrup Co. v. Putnam, 16 C. C. A. 376, 69 Fed. 740, followed.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

This is an appeal from a decree of the circuit court for the Eastern district of Michigan dismissing a bill in equity brought by the California Fig Syrup Company, a corporation of the state of Nevada, against Frederick Stearns & Company, a corporation of the state of Michigan, to enjoin the defendant from infringing that which complainant claims to be its trade-mark property in the name "Syrup of Figs" or "Fig Syrup," to designate a liquid laxative medicine. The ground upon which the circuit court refused the relief prayed for was that the complainant did not come into court with clean hands, but that in its advertisements and in the use of the term "syrup of figs" to designate the medicine which it sells, it was committing a fraud upon the public. See 67 Fed. 1008.

R. E. Queen, in 1879 or 1880, was a druggist in Reno, Nev. After experiments, he succeeded in making a liquid laxative preparation, the secret formula of which is now the property of the California Fig Syrup Company. He selected the name "Syrup of Figs" to designate the preparation because of the popular impression that the fig, when eaten, has the medicinal property of opening the bowels and curing or preventing constipation. The chief medicinal agent in the preparation is senna. Its exact composition is a trade secret, but this much is admitted. There is not now, and never has been, in the mixture, more than one-tenth of 1 per cent. of the juice of the fig; and this, it is conceded, is not enough to have any effect, either medicinally or by way of flavor. The popular impression that figs are laxative by reason of any medicinal element contained in them is erroneous. Their laxative effect when eaten in some quantities is caused by the physical action of the seeds and skin upon the bowels. There is practically no laxative property in the juice of the fig any different from that of the juice of any other fruit. It has no effect whatever unless taken in quantities as great as that of a pint or a quart. The business of the California Fig Syrup Company in the sale of this preparation has increased enormously. More than a half million of dollars have been expended in advertising it through the daily press and otherwise in this country and in foreign countries. Much evidence was introduced showing that the complainant's syrup of figs was a very useful medicine, and one prescribed by physicians of high standing.

Complainant's preparation is put up in bottles of two or three sizes. Blown into the bottle are the words "Syrup of Figs." Upon the paper label pasted on the bottle are these words: "Nature's Pleasant Laxative," "Syrup of Figs," "The California Liquid Fruit Remedy," "Gentle and Effective." Then follow the directions for use, in which reference is made to a printed circular wound around the bottle for further details, and at the bottom of the label is printed, "Manufactured only by the California Fig Syrup Co., of San Francisco, Cal.; Louisville, Ky.; New York, N. Y., U. S. A." The bottle is inclosed in a paper box or carton, on the outside of which is shown the picture of a branch of a fig tree with figs upon it, and around the branch are these words: "California Fig Syrup, San Francisco, Cal." Beneath this, in large print, is "Syrup of Figs," followed in type of a less size by the words, "Presents in the most elegant form the laxative and nutritious juice of the figs of California." The sentence is continued, but in fine print, as follows: "Combined with the medicinal virtues of plants known to be most beneficial to the human system, forming an agreeable and effective laxative to permanently cure habitual constipation and the many ills depending on a weak or inactive condition of the kidneys, liver, stomach, and bowels, and is perfectly safe in all cases, and therefore the best of family remedies. Manufactured only by the California Fig Syrup Co., of San Francisco, Cal., Louisville, Ky., New York, N. Y." There is also a direction on the outside of the carton to read the inside wrapper for full directions and description. Upon the wrapper, which

is printed in four languages, are further statements concerning the preparation and its exceptional medicinal qualities. The first paragraph is as follows: "The great natural demand for a pleasant, prompt, and effective laxative and gentle diuretic led to the combination of the laxative and nutritious elements of figs with the medicinal virtues of plants known to be most beneficial to the human system, thereby forming Syrup of Figs, and the universal satisfaction which this excellent remedy has given is attested by the immense quantity constantly used in all sections of the United States and in many other countries."

The evidence tends to show that the defendants are manufacturing druggists, who make a business of imitating proprietary medicines, and of attempting to secure a large sale of the imitations by selling them to druggists to be substituted by them in their trade for the advertised article. The preparation of the defendants is also a laxative medicine, in which there is considerably more of the juice or syrup of the fig than in that of the complainant. The defendant does not attempt to imitate the package or the bottle or any part of the outer dress of the complainant's article in making and preparing its own package. It does designate its article, however, as "Laxative Fig Syrup."

The seventh paragraph of the defendant's answer below was as follows: "And this defendant, further answering, denies that the complainant has any exclusive right whatever, or can have any exclusive right, to designate a syrup of figs by its common appellative. It admits that the name 'Syrup of Figs' undoubtedly distinguishes a syrup of figs from any syrup which is not a syrup of figs, and that if said complainant's syrup of figs is really what its title purports, said title distinguishes it from any other syrup which is not a syrup of figs; but this defendant submits that if the said syrup sold by the said complainant is really a syrup of figs, that said name is purely descriptive, and that, on the other hand, if it is not a syrup of figs, said name is false and deceptive, and that in either case the said complainant can have no exclusive right of property therein; and prays the same benefit of this defense as if it had formally demurred to said bill on that ground."

Paul Bakewell (R. A. Bakewell, of counsel), for appellant.

Geo. H. Lothrop, for appellee.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

TAFT, Circuit Judge (after stating the facts as above). Counsel for the appellee contends that the decree of the court below must be sustained on two grounds: First, that the complainant and appellant cannot appropriate as a trade-mark the term "Syrup of Figs," because it is a descriptive term, and relates to the composition of the article which it is used to designate; and, second, that the complainant cannot have relief in a court of equity, because, in using the name to designate the preparation which it sells, it is guilty of a distinct misrepresentation to the public, which has a tendency to mislead the public into buying the article with a false impression in respect to its manufacture and its composition.

1. There is nothing about the defendant's article which resembles the complainant's article except the words "Fig Syrup," which is substantially the same in meaning and appearance as the words "Syrup of Figs." "Syrup of Figs" is a descriptive term. It may be that no one had ever made a syrup of figs at the time that Queen selected the term to designate the preparation which he put upon the market. That is immaterial. It is entirely possible to describe something by the use of common words which may never have had a commercial use, or which may never have been in fact made. The

Century Dictionary describes "syrup" to be "a solution of sugar in water, made according to an official formula, whether simple, flavored, or medicated with some special therapeutic or compound." It is defined by Webster as "a thick and viscid liquid, made from the juice of fruits, herbs, etc., boiled with sugar." The Standard Dictionary defines "syrup" generally "as a thick, sweet liquid," and specifically as "a saturated solution of sugar in water, often combined with some medicinal substance, or flavored, as with the juice of fruits for use in confections, cookery, or the preparation of beverages." This authority further states that "syrups are commonly named from their source of flavoring." The Century Dictionary gives a number of medicinal syrups. Syrup of aconite is a mixture of tincture of fresh aconite root 1 part, with syrup 9 parts. Syrup of almond is sweet almond 10 parts, bitter almond 3 parts, sugar 50 parts, orange-flower water 5 parts, water to make 100 parts. Syrup of althaea is althaea 4 parts, sugar 60 parts, water to make 100 parts. Syrup of citric acid is citric acid 8 parts, water 8 parts, spirit of lemon 4 parts, syrup 980 parts. Syrup of garlic is fresh garlic 15 parts, sugar 60 parts, dilute acetic acid 40 parts. Syrup of gum arabic is mucilage of acacia 25 parts, syrup 75 parts. Syrup of ipecac is fluid extract of ipecac 5 parts, syrup 95 parts. Syrup of rhubarb is rhubarb 90 parts, cinnamon 18 parts, potassium carbonate 6 parts, sugar 600 parts, water to make 1000 parts. Syrup of squill is vinegar of squill 40 parts, sugar 60 parts, with water. Syrup of wild cherry is wild-cherry bark powdered 12 parts, sugar 60 parts, glycerine 5 parts, water to make 100 parts.

It is manifest that the term "Syrup of Figs," used to describe a medical preparation, has a distinct and definite meaning, namely, a combination of sugar and the juice of the fig, and possibly other ingredients, in which, however, the medicinal property of the fig is the active and chief element. That this is the sense in which the complainant intends it to be understood may be gathered from its reference to it as the "California Liquid Fruit Remedy," from its statement upon the package that it "presents in the most elegant form the laxative and nutritious juice of the figs of California," and from its statement in its circular "that it is a combination of the laxative and nutritious elements of figs with the medicinal virtues of plants known to be most beneficial to the human system, thereby forming Syrup of Figs." In Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625, it was held that the term "Iron Bitters" was so indicative of the ingredients, characteristics, and purpose of the preparation upon which it was placed that it could not be monopolized as a trade-mark. Mr. Justice Brown, delivering the opinion of the court, said:

"The general proposition is well established that words which are merely descriptive of the character, qualities, or composition of an article, or of the place where it is manufactured or produced, cannot be monopolized as a trademark (Canal Co. v. Clark, 13 Wall. 311; Manufacturing Co. v. Trainer, 101 U. S. 51; Caswell v. Davis, 58 N. Y. 223; Thomson v. Winchester, 19 Pick. 214; Raggett v. Findlater, L. R. 17 Eq. 29); and we think the words 'Iron Bitters' are so far indicative of the ingredients, characteristics, and purposes of the plaintiff's preparation as to fall within the scope of these decisions."

. The term "Syrup of Figs," therefore, cannot be used as a trademark. . .

· But it is well settled that, even if the complainant is using something to designate its articles which it cannot claim to have the exclusive right to use as a trade-mark, yet, if it can show to the court that the defendant is selling an article like the complainant's in such a way as to induce the public to believe that defendant's article is the complainant's, and that it is doing this intentionally and fraudulently, the complainant may have the relief of a court of equity by injunction to prevent such piracy.   Thus in this case, even though "Syrup of Figs" is such a descriptive term that it cannot be used as a trade-mark, yet, if the defendant here put its medicinal preparation up in packages ornamented and dressed so as to be a colorable imitation of the complainant's package, with the intention of misleading the public into the purchase of the defendant's article as the complainant's, then undoubtedly the defendant might be enjoined from thus attempting to palm off its article as the article of complainant.   Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625;  Lawrence Manuf'g Co. v. Tennessee Manuf'g Co., 138 U. S. 537, 11 Sup. Ct. 396;  Croft v. Day, 7 Beav. 84;  Holloway v. Holloway, 13 Beav. 209;  McLean v. Fleming, 96 U. S. 245;  Wotherspoon v. Currie, L. R. 5 H. L. 508;  Thompson v. Montgomery, 41 Ch. Div. 35–50.   In this case there is evidence tending to show that the defendant is attempting to appropriate to itself by unfair means the good name which the preparation of the complainant has acquired by advertising and use among the public at large.   Witnesses, who are retail druggists, testified that defendant's agents visited them, and recommended the sale of defendant's article, on the ground that the druggists could palm off defendant's article as complainant's article upon intending purchasers who were not familiar with complainant's package, and who called only for syrup of figs, intending thereby to purchase the complainant's article.   The defendant reduces the price of its article very considerably in order to induce druggists to take this course.   We are not prepared to say, therefore, that the complainant might not, except for the reason about to be stated, be entitled to some relief, by an injunction against the defendant to prevent unfair competition.

2. But the second ground presented, and that upon which the court below rested its decision, prevents the complainant from having any relief at all.   That ground is that the complainant has built up its business and made it valuable by an intentional deceit of the public.   It has intended the public to understand that the preparation which it sells has, as an important medicinal agent in its composition, the juice of California figs.   This has undoubtedly led the public into the purchase of the preparation.   The statement is wholly untrue.   Just a suspicion of fig juice has been put into the preparation, not for the purpose of changing its medicinal character, or even its flavor, but merely to give a weak support to the state-. ment that the article sold is syrup of figs.   This is a fraud upon the public.   It is true, it may be a harmless humbug to palm off upon the public as syrup of figs what is syrup of senna, but it

is nevertheless of such a character that a court of equity will not encourage it by extending any relief to the person who seeks to protect a business which has grown out of, and is dependent upon such deceit. It is well settled that if a person wishes his trade-mark property to be protected by a court of equity he must come into court with clean hands, and if it appears that the trade-mark for which he seeks protection is itself a misrepresentation to the public, and has acquired a value with the public by fraudulent misrepresentation in advertisements, all relief will be denied to him. This is the doctrine of the highest court of England, and no court has laid it down with any greater stringency than the supreme court of the United States. Medicine Co. v. Wood, 108 U. S. 218, 2 Sup. Ct. 436; Leather Cloth Co. v. American Leather Cloth Co., 4 De Gex, J. & S. 137, and 11 H. L. Cas. 523; Buckland v. Rice, 40 Ohio St. 526; Palmer v. Harris, 60 Pa. St. 156; Prince Manuf'g Co. v. Prince's Metallic Paint Co., 135 N. Y. 24, 31 N. E. 990; Krauss v. Jos. R. Peebles' Sons Co., 58 Fed. 585; Connell v. Reed, 128 Mass. 477; Siegert v. Abbott, 61 Md. 276–284. The argument for complainant is that, because fig juice or syrup has no laxative property, everybody ought to understand that when the term is used to designate a laxative medicine it must have only a fanciful meaning. But the fact is admitted that the public believe that fig juice or syrup has laxative medicinal properties. It is to them that the complainant seeks to sell its preparation, and it is with respect to their knowledge and impressions that the character, whether descriptive or fanciful, of the term used, is to be determined. Exactly this question, raised against the same complainant, was considered by the circuit court for the district of Massachusetts (Syrup Co. v. Putnam, 66 Fed. 750), and relief was denied by Judge Colt to the complainant on the ground that its use of the term "Syrup of Figs" was a misrepresentation to the public, and a fraud upon it. The case was carried to the court of appeals and affirmed upon the opinion of the circuit judge. 16 C. C. A. 376, 69 Fed. 740.

Reliance is had by the defendant upon a decision of the court of appeals of the Ninth circuit, which was on an appeal from an order of Judge McKenna, granting a preliminary injunction. Improved Fig Syrup Co. v. California Fig Syrup Co., 4 C. C. A. 264, 54 Fed. 175. The opinion in the Ninth circuit is based on the theory that the term "Syrup of Figs" is not descriptive. We are unable to follow that learned court to this conclusion. It seems to us that the reasoning of Judge Colt, affirmed as it is by the court of appeals of the First circuit, is more satisfactory.

The decree of the court below is affirmed, with costs.