GENESEE SALT CO. v. BURNAP et al.

(Circuit Court of Appeals, Sixth Circuit. April 14, 1896.)

No. 370.

TRADE-MARKS—UNFAIR COMPETITION—GEOGRAPHICAL NAMES.

A manufacturer of salt in the Genesee valley will not be enjoined from using the word "Genesee" in connection therewith; but he will be restrained from using it in any color, style, or form of letters, or in combination with other words, so as to imitate a combination previously used by another maker of salt in the same locality. 67 Fed. 534, affirmed.

Appeal from the Circuit Court of the United States for the Western Division of the Northern District of Ohio.

This is an appeal from a decree of the circuit court for the Northern district of Ohio entered upon a bill filed by the Genesee Salt Company, a corporation organized under the laws of the state of New York, against Burnap & Burnap, a partnership of citizens of Ohio, to restrain unfair competition in business. The Genesee Salt Company has its salt works at Piffard, Livingston county, in the valley of the Genesee river, in the state of New York. It manufactures salt of various qualities. The salt which it prepares for dairy purposes is packed in sacks and bags of white English or Irish linen, branded in black letters as follows:

GENESEE SALT CO.

REGISTERED

Factory Filled.

This salt has been sold since 1884, and has come to be known among the buyers of salt as "Genesee Salt." The firm of Burnap & Burnap, of Toledo, Ohio, was organized in 1890 for the sale of dairy supplies. Among other supplies, they sold complainant's Genesee Salt in bags as packed by complainant. In 1892 they purchased from the Pavilion Company (a company which makes salt at the town of Pavilion, in Genesee county, in the state of New York) dairy salt which the Pavilion Company called "Genesee County Salt." The salt was packed in bags made of brown toweling, and marked:

GENESEE CO.
Factory Filled
Salt
Put up Expressly for
Burnap & Burnap,
Toledo, Ohio.

"Factory Filled" is a term widely used to denote a quality of dairy salt.

In 1892 the salt works at St. Clair, Mich., of the company which manufactured the Diamond Crystal Salt, burned down, and Burnap & Burnap filled their orders for that salt with the Genesee County Dairy Salt. Soon after this, Burnap & Burnap issued the following circular to their customers:

### Great Cut on Our Best Dairy Salt.

Owing to our large sales during the past 60 days of our celebrated Genesee County Dairy Salt, we have decided to continue selling, for 60 days longer, at the following reduced prices:

| 224 | lb. | No. | 1 | English | Bags, | at | $1.60 | each |
| 56 | lb. | No. | | " | " | " | .45 | " |

This salt is perfect in grain; strong, white, and pure; warranted to preserve butter, and to retain the natural high flavor, equal to any other brand on the market. As further inducement to those who have no market for them, we offer, in cash, for uniform empty sacks delivered to us in Toledo, $2.00 per dozen for 224-pound sacks, and $1.00 per dozen for 56-pound sacks. The above prices are for Genesee County brand only. We give you our profit on salt for above-stated time only, hoping to increase our general supply trade. Please send in your orders, and do not forget to add to the salt order other supplies, which will be shipped promptly.

Burnap & Burnap,

120 Superior Street, Toledo, Ohio.

In October, 1892, the complainant sent a circular to their customers as follows:

The Genesee Salt Company, Mercantile Exchange, 6 Harrison Street.

Works at Piffard, Livingston Co., N. Y.

New York, Oct. 15, 1892.

Gentlemen: We beg leave to advise that a firm in Ohio are offering for sale what they call "Genesee County Dairy Salt," in reference to which would say that the salt in question is not manufactured by us, and that the action of the firm in question appears to be an attempt to obtain custom on the strength of our name and reputation.

Yours, truly, The Genesee Salt Company.

The defendants reprinted the foregoing, and sent it to all their customers, and others, with this answer:

Office of Burnap & Burnap.

Toledo, Ohio, October 24, 1892.

Yes, we live in Ohio, and sell Genesee County Salt, and wish all customers to know that while our salt is manufactured in Genesee County, New York, and is far superior in strength, purity, and grain to many of the well-known brands of dairy salt, we sell at reasonable prices, viz. $1.60 for each No. 2 English linen sack of 224 lbs. We also fully warrant every sack, and, if not found equal to any dairy salt, it can be returned to us, by freight, at our expense. It is not the brand, but the 65 cents gain to our customers on each sack, as well as our immense sales of this salt, that causes our competition bird to croak and flutter. We do not obtain custom on the strength of $2.25 salt, but simply on the quality and price of our goods, together with honest dealing and equal prices to all. We solicit further trial orders for our Genesee County Salt.

Yours, truly, Burnap & Burnap,

Toledo, Ohio.

It appeared that Burnap & Burnap, in 1891,—the year previous,—had applied to the Genesee Salt Company to become their agents, and this was refused. One witness testified that one of the firm of

Burnap & Burnap sold him Genesee County Salt as Genesee Salt,—that is, as the salt of the Genesee Salt Company; but this was expressly denied, and the correspondence subsequently produced gave the weight of evidence to the denial. One letter was introduced in which a request was made to Burnap & Burnap for Genesee Salt, Factory Filled, and it was answered by sending Genesee County Salt. This was all the evidence tending to show an effort on the part of the defendants to palm off, as Genesee Salt, Genesee County Salt, except the use of the abbreviation "Co." for "County," on their bags. This was apt to mislead purchasers into the belief that the salt was that of the Genesee Company. The evidence of the proprietor of the Pavilion Salt Company, which manufacture.: the salt, and packed it and marked it, is that he suggested the use of "Genesee County" as the brand, and that it had been used for other customers previously. It appears that the Pavilion Salt Company's works are within a few miles of those of the Genesee Salt Company, and that no suit has been brought by the latter against the former to restrain the use of the brand of "Genesee County Salt." The stratum of rock salt from which the complainant's salt and that of the Pavilion Salt Company are taken is the same. It extends through several counties in the western part of New York, and crosses the Genesee valley, and is to be found in Genesee and Livingston counties. The court below entered the following decree:

This cause came on to be heard on the pleadings and proofs in the case, and was argued by counsel for both complainant and defendants. In consideration whereof, the court finds that the equities of said cause are with the complainant. It is therefore ordered, adjudged, and decreed that the said defendants, Hiram F. Burnap and James D. Burnap, their agents and servants, and each of them, be, and they are hereby, perpetually enjoined and restrained, and that an injunction issue perpetually enjoining and restraining them, and each of them, from branding or marking upon any sacks or other 1.. eptacles containing salt, not of the manufacture of complainant, the words "Genesee Co. Salt," or any other words or designations similar thereto, or only colorably differing therefrom, or any words or marks so contrived as to represent or lead to the belief that the salt contained in said sacks or other receptacles is the salt of the complainant, and from packing, keeping, selling, or offering for sale, or in any manner disposing of, or offering to dispose of, any salt so marked, and from advertising, by letters, circulars, price lists, catalogues, or otherwise, any salt, not the salt of the complainant, so marked or designated; and they, and each of them, are in like manner restrained and enjoined from representing, in any form or manner whatsoever, that any salt not of complainant's manufacture is the salt of said complainant. But it is ordered that this decree is not to be construed as applying to or prohibiting the use by defendants of the words "Genesee County Salt," or "Genesee Salt," in the sale of salt actually manufactured in Genesee county or in the Genesee valley, when said words shall be used without abbreviation, and not in imitation of, or in resemblance to, the mark of the complainant set forth in the bill of complaint herein. 67 Fed. 534.

Though this decree was in favor of the complainant, it was not sufficiently broad, in its view, to protect it. Therefore it appealed from the decree, and assigned errors as follows:

First. That the court erred in refusing to grant a decree providing for the issuance of an injunction herein perpetually restraining the defendants, Hiram F. Burnap and James D. Burnap, their agents and employés, from packing, selling, or keeping or offering for sale, or otherwise disposing of, any salt not of complainant's manufacture, under the terms "Genesee Salt,"

or "Genesee Co. Salt," or to which shall be applied, in any form or manner, as the name and designation thereof, the words "Genesee Co. Salt," or the words "Genesee" and "Genesee Salt," with or without other words, and from, in any other form or manner, using any name or designation which is calculated to cause their article to be known in the market and sold under the name of complainant's article, or as "Genesee Salt." Second. That the court erred in ordering in its decree heretofore entered herein that said decree was not to be construed as applying to, or prohibiting the use by defendants of, the words "Genesee County Salt," or "Genesee Salt," in the sale of salt actually manufactured in Genesee county or in the Genesee valley, when said words shall be used without abbreviation, and not in imitation of, or in resemblance to, the mark of the complainant set forth in the bill of complainant herein.

Geo. H. Beckwith, for appellant.

John F. Kumler (Almon Hall, of counsel), for appellees.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

TAFT, Circuit Judge (after stating the facts as above). It is well settled, and we have just had occasion to decide in this court, that words merely descriptive of the character, quality, and composition of the article, or of the place where it is manufactured or produced, cannot be monopolized as a trade-mark. California Fig-Syrup Co. v. Frederick Stearns & Co. (decided by this court at the present term) 73 Fed. 812; Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625; Canal Co. v. Clark, 13 Wall. 311. The name "Genesee," when used in connection with complainant's salt, obviously refers to the place of its production. The complainant could, therefore, assert no trade-mark property in it. This principle is not denied by counsel for complainant. He relies rather upon that line of cases in which equitable relief has been granted to restrain unfair competition. Where one is shown to be palming off his manufactures as those of another, he may be enjoined, even where he commits the fraud by the use of names which are not the subject of trade-mark property. This principle is well established by the decisions of the supreme court of the United States in Lawrence Manuf'g Co. v. Tennessee Manuf'g Co., 138 U. S. 537, 11 Sup. Ct. 396; and McLean v. Fleming, 96 U. S. 245,— and in the English courts in the cases of Croft v. Day, 7 Beav. 84; Holloway v. Holloway, 13 Beav. 209; Wotherspoon v. Currie, L. R. 5 H. L. 508; Thompson v. Montgomery, 41 Ch. Div. 35–50. We do not differ from counsel for the complainant in his exposition of the principles of law. His difficulty is that the facts of the case do not justify their full application. The evidence upon which it is claimed that Burnap & Burnap were fraudulently palming off the Genesee County Salt as the salt of the Genesee Salt Company is very slight. There is possibly enough evidence to sustain the claim that originally the name "Genesee County" was adopted with the abbreviation of "Co." for "County" to induce the purchase of the Genesee County Salt as that of the Genesee Salt Company, though it must be admitted that a most cursory examination would show very little resemblance between the packages; for the one is white linen, and the other is a brown English toweling. The lettering is not the same, one being solid, and the other open; and the only resemblance is in the collocation of the words "Genesee Co.," "Factory Filled," and "Salt."

It appears that, immediately upon the complaint being made by the Genesee Salt Company that this was a colorable imitation of their goods, Burnap & Burnap sent out 5,000 circulars making clear the difference, and that their salt was Genesee County Salt, as distinguished from the salt of the Genesee Salt Company. The court below was of opinion that it would sufficiently protect the complainants from unfair competition to require that the word "Co." should be written out in full, so as to read "County," and that the defendants should be enjoined from representing in any way that the salt of the defendants was the salt of the complainant; but the court was of opinion that it ought not to enjoin the defendants from using the words "Genesee County Salt" and "Genesee Salt" in the sale of salt actually manufactured in Genesee county, when those words were used without abbreviation, and not in imitation of the trade-mark of the complainant, as set forth in the bill. On the whole case, we think that the court gave the complainant all that it was entitled to. If the defendants had been persistently palming off their goods as the goods of the complainant, equitable relief might have gone to the extent of enjoining the use of the word "Genesee" by defendants; but, by their circulars, the defendants, if they ever had any purpose to pirate the business of the Genesee Salt Company by use of the words "Genesee Co.," abandoned it, and explained to the public what was the fact, namely, that their salt was made in Genesee county. They may rightfully call it "Genesee Salt," or "Genesee County Salt," provided they do not mislead the public into buying their salt as the salt of the complainant. Under the restrictions of the decree of the circuit court, we do not think there is any evidence that they are doing this, or intend to do it. The decree is affirmed.