## SCHUSTER COMPANY *v.* MULLER.

TRADEMARKS; LABELS; DECEPTION.

1. Where, in a trademark case, the question is as to priority of adoption and use, as between S. and M., of the word "Bismarck" as a trademark for bitters, M. asserting a continuous use since 1892, and S. since 1895; and the testimony of S.'s witnesses, all of whom are parties in interest, is merely to the effect that, according to their best recol-

lection the trademark was used six, seven, eight, or nine years prior to 1898; while the testimony of M., both documentary and oral, clearly shows an adoption by him of the trademark in 1892 and a continuous use since that time,—M. is entitled to an award of priority.

2. A mixture of ground roots and bark, where the wrapper of the package containing the mixture has on it directions how to make the bitters by steeping the contents in Holland gin, is to be considered goods of the same descriptive property as bitters made from such roots and bark, and bottled.

3. Where any symbol or label claimed as a trademark is so worded as to contain a distinct assertion which is false, no property right can be claimed; nor can the right to the exclusive use of it be maintained in a court of equity.

4. A contention by one of the parties to a trademark interference involving the prior adoption and use of the word "Bismarck" as a trademark for bitters, that the representations of the other party in the printed matter on his label are deceptive, is not supported by a chemical analysis of the contents of a labeled bottle, and the testimony of a physician to the effect that while the preparation would not, in his opinion, have all the effects claimed for it in such printed matter, its action would be good in some respects, and it was a good bitter.

No. 366. Patent Appeals. Submitted November 16, 1906. Decided December 4, 1906.

HEARING on an appeal from a decision of the Commissioner of Patents in a trademark case. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Arthur E. Wallace* for the appellant.

*Messrs. Steuart & Steuart* and *Mr. Francis M. Phelps* for the appellee.

Mr. Justice MCCOMAS delivered the opinion of the Court:

This appeal is from a decision of the Commissioner of Patents concerning a trademark for bitters. Wm. H. Muller filed his application October 5, 1905, and therein claimed to have

continuously used the word "Bismarck" as his trademark for bitters since January, 1892. On May 25, 1905, the Schuster company filed its application for a trademark consisting of the word "Bismarck" and the picture of Bismarck inclosed in a circle, which trademark for bitters it claimed to have continuously used since the year 1895.

The question is priority of adoption and use of the word "Bismarck" as a trademark for bitters. The Schuster company as a corporation succeeded to a copartnership of the same name in 1900 and to the title of the firm to all trademarks. The firm conducted the business from 1890 until 1900. The company is a wholesale dealer in wines and liquors.

Edward L. Schuster its vice president, testified that the firm adopted the mark, he should judge, about 1892, and it was used while the firm still sold its goods at retail; and his company he thinks, has been engaged in the wholesale business since 1898. The only book entry he produced was the entry of a sale on March 17, 1899, of one gallon of Bismarck Pepsin Bitters to a clergyman, although he said the company had been selling to the trade, of late years, about 2,000 cases annually; he knew that the firm had sold goods under this trademark seven or eight years previous to the time, 1898, when the company engaged in the wholesale business. Upon cross-examination he said he could not accurately fix the date, it might have been six, or seven, or eight, or nine years prior to the entry in the wholesale business. The firm kept no cash books, no entry of sales while in the retail business.

Charles F. Schuster, aged twenty-nine years, secretary of the company, testified that for eleven years he had been connected with the business of the company; since he was eighteen, he had been engaged with it in a business capacity; previous to that, while going to school, he had assisted in the retail sales after school hours, and he knew that the firm had used this trademark for a good many years prior to his connection with the company. This witness had signed the application, fixing the date of use as 1895, and he said he had fixed the date without any research, because he remembered that the firm sold the goods

under this trademark at that time. Upon cross-examination he said that, as far as he could remember, the firm used the trademark about sixteen years back, while he was going to school, but he could not produce any records to confirm his memory. The vice president, he said, had fixed the date for this application.

The third and last witness was Jacob Schuster, aged twenty-one years, who for four years has been compounder for the Schuster company, and during all that time this trademark had been used. He was positive of its use in 1899, when the witness was fourteen years old, for then he had started to assist in the business after school hours.

The Schuster company in its application claimed continuous use since 1895, while Muller, the appellee, claimed continuous use since 1892. When the Schuster company endeavored to prove adoption and use of the trademark, prior to January, 1892, all three witnesses were members of the Schuster family and officers of the company, and, taking together their statements, their best recollection appears to be that the trademark was used six or seven, or eight or nine years prior to 1898, when the retail business and the wholesale business commenced. In January, 1892, one of these witnesses was a boy of fourteen, another a child of eight years of age, and the only record of sale produced was of a sale of a gallon of bitters in March, 1899. All of these witnesses are parties in interest.

Muller, the other applicant, in his own behalf testified that he adopted this mark in December, 1891. He registered it in the trademark record in January, 1892, and in that month commenced selling a mixture of ground roots and barks to be used in making bitters, each package being inclosed in a wrapper bearing the words "Bismarck Bitters" and other printed matter, including directions for making the bitters by steeping the contents in Holland gin. In 1894 he commenced selling the bitters in liquid form, each bottle having a label bearing the identical label accompanying the application for registration. A package of the mixture of roots and barks, and a bottle of the bitters, each bearing the label "Bismarck Bitters," were

introduced in evidence. He also introduced his ledger, which shows sales of Bismarck Bitters during 1892, 1893, 1894, 1895.

One Kennedy, of the firm of Charles N. Crittenton & Company, testified that the firm books show that his firm purchased Bismarck Bitters from Muller first on May 14, 1892, and at other times during that year and the two following years, and regularly since 1894. He produced his firm's catalogue, listing Muller's "Bismarck Bitters" in the issues for the years 1893 and 1894, and he identified the bottle bearing the label "Bismarck Bitters."

Gazley, a printer, testified that on January 5, 1892, he had printed the identical wrapper with the mark "Bismarck Bitters," and also circulars containing it, and again had printed circulars on January 13, 1892, and had printed the like in each of the next succeeding years. He identified the label as one he had printed on the package of ground roots and barks in 1892.

Lowenherz, an advertising agent employed by Muller, testified that he had caused advertisements of the "Bismarck Bitters" to be published in the German Morgen Journal from April 18, 1892, up to October of that year, and he identified clippings as such printed advertisements, and he also identified like advertisements in the Evening Sun, probably in 1892 or 1893, in Frank Leslie's in 1892, and in the Evening World as early as June, 1894. Refreshed by the advertisements he had clipped from the newspapers and placed in his scrapbook, the witness testified from personal recollection. This evidence on the part of Muller, who produced, in addition to his own recollection, his ledger and also the important testimony of three disinterested witnesses, clearly establishes that as early as January, 1892, Muller adopted the trademark in issue, and has used it continuously since that time. The mixture of ground roots and bark having, on the wrapper of the package containing the mixture, directions how to make the bitters by steeping the contents in Holland gin, was properly considered by the Commissioner to be goods of the same descriptive property as bitters made from these roots and barks, and bottled. We have stated in de-

tail the testimony produced in support of each application, and it so clearly preponderates in favor of the prior adoption and use of this trademark by Muller, the appellee, that it needs no further discussion. Schuster & Company have failed to establish by clear and convincing proof that they were using the mark prior to January 5, 1892, and, as we have said, the proof is convincing that ever since that date, when Muller adopted it, he has been continuously using this trademark for bitters.

The appellant, evidently appreciating the weakness of its testimony, introduced testimony the object of which was to show that the printed matter on the label of Muller is deceptive.

The Examiner of Interferences decided that the testimony does not show such deception, and the Commissioner of Patents concluded that the contention of the Schuster company that the bitters of Muller are without effect upon the kidneys, and are not proper medicine for children, should not deprive Muller of the trademark, because the truth of these contentions is not satisfactorily established. Recent salutary laws restrain manufacturers and dealers from imposing upon the public preparations injurious to health. The courts grow increasingly careful and cautious in restraining false representations to the public in vending such preparations. Where any symbol or label claimed as a trademark is so worded as to contain a distinct assertion which is false, no property right can be claimed; nor can the right to the exclusive use of it be maintained by a court of equity. Courts of equity will not interfere by injunction where there is any lack of proof, in the applicant's case, or any misrepresentation in his trademark or label; nor will the courts uphold in anyone a privilege of deceiving the public. An exclusive privilege to deceive the public is not one that a court of equity can sanction, nor one which the Commissioner of Patents should aid. While there is a right of property in a trademark in connection with a vendable commodity it is essential that the vendor should not, in his trademark, or in the printing connected therewith, or in the business use of

the trademark, himself be guilty of any false or misleading· representations. It is settled that, where the owner of such a trademark applies for an injunction to restrain another, his. petition will be denied. See *Clinton E. Worden & Co.* v. *California Fig Syrup Co.* 187 U. S. 516, 47 L. ed. 282, 23 Sup. Ct. Rep. 161; *California Fig Syrup Co.* v. *Frederick Stearns· & Co.* 33 L.R.A. 56, 20 C. C. A. 22, 43 U. S. App. 234, 73 Fed.. 812; *Leather Cloth Co.* v. *American Leather Cloth Co.* 4 DeG.. J. & S. 137, 11 H. L. Cas. 523; *Fetridge* v. *Wells,* 4 Abb. Pr.. 144; *Manhattan Medicine Co.* v. *Wood,* 108 U. S. 218, 27 L.. ed. 706, 2 Sup. Ct. Rep. 436; *Siegert* v. *Gandolfi,* 139 Fed. 917.

These considerations require us to carefully scrutinize the testimony of the two witnesses produced by the appellant upon. the point of deceptive use of this trademark by Muller.

John G. Spenzer, a chemist in Cleveland, Ohio, of twenty years' experience, testified that he had analyzed a bottle of Muller's Bismarck Bitters, and found that it contained carda-- mon, calamus, galangal, aloes, capsicum, coriander, rhubarb, sugar, alcohol and water. The alcohol was 42 5-10 per cent. This bottle was not purchased directly from Muller, the manu- facturer. Schuster & Company notified the witness that the package would arrive from New York, and he received it by express from Hageman's Pharmacy in that city, with the seal unbroken. Counsel after cross-examination appear to be satis- fied that the bottle and the contents were the same Muller usually sold under this trademark. Dr. J. B. McGee, a physi- cian of Cleveland, Ohio, was asked respecting the contents of the bottle, as stated by the preceding witness, and to tell whether or not, in his opinion (following the language on the printed label on the bottle under the words "Bismarck Bit- ters"), a cordial glass full of bitters, taken once or twice a day from a bottle containing the contents just read to the witness,. is a tonic preparation, or a small wine glass full before break- fast or at bedtime is a health-preserving preparation, and for children in proportion, beneficial or otherwise, for regulating the bowels, eliminating tendency to catarrh of the stomach and liver and diseases of the kidney; and Dr. McGee testified that

the bitters would be stomachic and the action good in dyspepsia; that the only agents mentioned therein that would have any special effect upon the liver are aloes and rhubarb, and that he did not recall any ingredient that has any action upon the kidneys. As he recalled it, the physician pronounced it a very good bitter. He would not use the preparation as a routine remedy for children, for he would have no alcohol. The physician stated that possibly 20 per cent of alcohol was necessary to preserve the bitters, and any percentage beyond that would be a stimulant, and that this bitter tonic appeared to contain the ordinary ingredients of bitters.

Upon this testimony we cannot say that the Commissioner of Patents erred in determining that the contention of the appellant, that the printed matter upon Muller's label is deceptive, was not satisfactorily established. The order of the Commissioner of Patents, in so far as it relates to this interference, is affirmed, and this opinion will be certified to the Commissioner of Patents in accordance with law.                     *Affirmed.*